United States Court of Appeals,

Fifth Circuit.

No. 92-4514.

Solomon OGBEMUDIA, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

April 19, 1993.

Petition for Review of an Order of the Board of Immigration Appeals.

Before WIENER, BARKSDALE, and DeMOSS, Circuit Judges.

WIENER, Circuit Judge.

Petitioner Solomon Ogbemudia appeals the final order of the Board of Immigration Appeals (BIA), which found him deportable and denied his motion to reopen his application for asylum and withholding of deportation. In the BIA's final order, it affirmed the decision of the Immigration Judge (IJ), finding 1) that Ogbemudia was deportable under § 241(a)(1)(B) of the Immigration and Nationality Act (INA)[1] and 2) that Ogbemudia had made no application for relief from deportation. Ogbemudia challenges the decision of the BIA, claiming that its refusal to reopen his case was an abuse of discretion. He also contests the procedures followed by the IJ, claiming a violation of due process. After considering these issues under their respective standards of review, we find no reversible error and affirm.

I

FACTS AND PROCEEDINGS

Ogbemudia, a native of Nigeria, first entered this country as a student in 1981. He obtained an associate's degree from Houston Community College in 1987, and thereafter attended Prairie State A & M University for two semesters. During the period 1986 through 1988, Ogbemudia was convicted of two separate counts of theft, one count of attempted theft, and one count of assault. As a result, he was deported to Nigeria in September 1988 for having committed crimes involving

[1] 8 U.S.C. §§ 1101-1557, § 1251(a)(1)(B).

moral turpitude.

Never applying for readmission, Ogbemudia reentered the United States illegally in 1990. In April 1991, Ogbemudia was once again convicted in Harris County, this time for possession of a counterfeit driver's license. He was sentenced to five years in prison. In 1992, apparently while he was in detention, Ogbemudia's common-law marriage was registered in Harris County.

The Immigration and Naturalization Service (INS) issued an order to show cause, charging Ogbemudia as deportable under four separate sections of the INA: § 241(a)(1)(B)[2] (entry into the United States without inspection); § 241(a)(1)(A)[3] (conviction of crime involving moral turpitude); § 241(a)(1)(A)[4] (reentry after deportation without reapplication for admission); and § 241(a)(2)(A)(i)[5] (conviction of crime involving moral turpitude within five years of date of entry and imprisonment or sentence to imprisonment for one year or more). Ogbemudia did not contest this information, and even now does not contest his deportability under those sections of the INA.

Ogbemudia first appeared before the IJ in connection with the instant charges on November 25, 1991. At that hearing, the INS agreed that it would proceed on the § 241(a)(1)(B) charge of entry without inspection. Ogbemudia made several requests at this hearing, seeking a transfer of his proceeding to Houston and asking the IJ to set bond. The IJ denied both these requests, although he did grant a continuance so that Ogbemudia could obtain counsel. On December 2, 1991, Ogbemudia appeared before the IJ a second time, again without counsel, explaining that he had been unable to obtain counsel. The IJ granted a second continuance so that Ogbemudia could hire an attorney, but stated clearly that he would grant no more continuances. At this time Ogbemudia renewed his request for bond, which the IJ again refused.

Ogbemudia appeared for a third time before the IJ on December 23, 1991, and for a third time he appeared without counsel. He explained to the IJ that he had contacted two lawyers from the list

---

[2]*Id.* § 1251(a)(1)(B).

[3]*Id.* § 1251(a)(1)(A).

[4]*Id.*

[5]*Id.* § 1251(a)(2)(A)(i).

given to him, but that one attorney had refused to represent him and a second attorney had insisted on payment prior to representation. Ogbemudia claimed he was unable to send the money for attorney's fees due to his detention; that the attorney never came to see him; and that when Ogbemudia phoned the attorney he told Ogbemudia to come see him when he was out on bond. The IJ asked whether Ogbemudia had received any indication from that attorney that he intended to represent Ogbemudia, to which question Ogbemudia replied that he had received nothing but the attorney's business card.

After this exchange, the IJ informed Ogbemudia that he would have to proceed *pro se,* as he had been warned at the prior hearing that no additional continuances would be granted. Ogbemudia conceded his deportability, admitting that he had been convicted five times, and that he had been sentenced to five years for possession of a counterfeit driver's license. In rendering his decision, the IJ stated:

> From everything that I have heard, you are not eligible for any relief from deportation. You served more than six months in jail during the last five years which means you're not eligible for voluntary departure. You were previously deported from the United States in 1988. That in combination with the fact that you have been outside the United States for an extended period of time during the last seven years means that you are also not eligible for suspension of deportation.

He then ordered Ogbemudia deported to Nigeria, the country which Ogbemudia had designated when asked.

One day later, on December 24, 1991, Ogbemudia filed a notice of appeal, claiming that he would be killed by Muslim fundamentalists if deported to Nigeria. In March 1992, Ogbemudia—now represented by counsel—submitted a brief on appeal and a motion to reopen. He did not challenge the deportation order, but requested reopening for consideration of his request for asylum or withholding of deportation.

As a basis for his request, Ogbemudia submitted a declaration explaining his fear of returning to Nigeria, including the fact of his father's murder by religious fanatics while the father was conducting a Christian church service. In addition, Ogbemudia submitted declarations from his cousin and from his common-law wife, both located in Houston, that Ogbemudia's father had been killed by Muslim fundamentalists. Those affiants also expressed the opinion that Ogbemudia faced

the same fate if he returned to Nigeria. Finally, Ogbemudia submitted an undated country report and a magazine article detailing the religious unrest in Nigeria.

On review, the BIA characterized Ogbemudia's challenge as a motion to remand to the IJ for consideration of the deportee's request for asylum and withholding of deportation. Nonetheless, the BIA considered the motion as one to reopen, noting that the requirements for a motion for a remand apply equally to a motion to reopen.

Ultimately, the BIA rejected Ogbemudia's claim, citing three reasons. First, it noted that the evidence he submitted regarding persecution had been available at his deportation proceeding. The BIA considered unreasonable Ogbemudia's explanation for his failure to seek asylum at the deportation proceeding—he claimed he was unaware he had a right to seek asylum—given his education, his prior deportation, and his exposure to the judicial system. Second, the BIA found that Ogbemudia had failed to demonstrate prima facie eligibility for asylum or withholding of deportation. Finally, the BIA concluded that Ogbemudia's motion failed to show that he would be entitled to discretionary relief, given his five criminal convictions.[6]

II

DUE PROCESS CLAIM

A. *Standard of Review*

In immigration cases, we are authorized to review only the decision of the BIA, not that of the IJ.[7] We consider the errors of the IJ only to the extent they affect the decision of the BIA,[8] which itself conducts a de novo review of the administrative record.[9] If, as alleged, Ogbemudia's lack of counsel prevented him from receiving a fair hearing, that violated due process. The BIA, by affirming the allegedly unfair proceedings without addressing the issue of due process, has sanctioned the

---

[6]Although a convicted alien may be granted discretionary relief, no relief is available if the crimes are deemed "particularly serious ... constituting a danger to the community.:" 8 C.F.R. ¶ 208.14(B).

[7]*Castillo-Rodriguez v. INS,* 929 F.2d 181, 183 (5th Cir.1991) (citations omitted).

[8]*Adebisi v. INS,* 952 F.2d 910, 912 (5th Cir.1992).

[9]*Castillo-Rodriguez,* 929 F.2d at 183.

alleged violation.  Consequently, we review Ogbemudia's due process claim de novo.

B. *Ogbemudia's Due Process Claim*

Ogbemudia's due process claim contains two elements.  He first argues that the IJ's decision not to release him on bond, and the effect that decision had on his ability to retain counsel, violated his due process rights.  Second, he insists that this court's decision in *Partible v. INS*[10] entitles him to a new proceeding.  We address each contention in turn.

We note at the outset that even though Congress has provided by statute that an alien has a right to obtain counsel at his own expense,[11] an alien does not have a Sixth Amendment right to counsel in an immigration proceeding.[12]  Nevertheless, the absence of an attorney may create a due process violation if the defect "impinged upon the fundamental fairness of the hearing in violation of the fifth amendment,"[13] and there was substantial prejudice.[14]

Despite his need to surmount this stringent standard, Ogbemudia still insists that the IJ's refusal to grant him bond prevented him from obtaining counsel and therefore violated his due process rights.  We find this argument to be wholly without merit.  Although obtaining counsel while in detention pending a hearing may prove inconvenient, it does not rise to the level of a due process violation.  This is especially true in the instant case, given that the IJ allowed Ogbemudia an entire month within which to obtain counsel.  Like all aliens detained for deportation, Ogbemudia was given a list of attorney's who would represent him at a reduced fee or for no fee at all.  Yet, during his month in detention, Ogbemudia phoned only two attorneys, both of whom were reluctant to represent him, the second one for financial reasons only.  Apparently Ogbemudia made no attempt to contact any other private attorneys or to obtain free legal service.

We note that, in addition to the ample time Ogbemudia had within which to retain legal

---

[10]600 F.2d 1094 (5th Cir.1979).

[11]8 U.S.C. § 1362.

[12]*Paul v. United States INS,* 521 F.2d 194, 197 (5th Cir.1975).

[13]*Id.* at 198.

[14]*Patel v. United States INS,* 803 F.2d 804, 807 (5th Cir.1986).

representation, he had several other advantages normally not possessed by a detained immigrant. Ogbemudia was educated in the United States; he had first hand knowledge of both deportation and criminal proceedings; and he had outside help available in the persons of his common-law wife and his cousin, both of whom were conveniently located nearby in Houston. Given all these advantages, Ogbemudia's failure to obtain counsel is exactly that—his failure. The blame cannot be shifted to the IJ or the INS.

Also without merit is Ogbemudia's reliance on this court's decision in *Partible*. In that case, a panel of this court held that the BIA abused its discretion in refusing to reopen the deportation proceedings of an immigrant nurse who had waived counsel. The proceeding involved the conditions of her nonimmigrant status and state law restrictions on the services she legally could perform. The court found that the waiver was not knowing, that the IJ had not explained the complexity of her dilemma, and that the outcome of the deportation proceeding might have been different if she had had benefit of counsel.

The factual distinctions between the situation of the immigrant in *Partible* and Ogbemudia's circumstances persuade us that *Partible* does not require a reversal of the BIA's decision here. The court in *Partible* ascribed some fault to the IJ for failing to explain the complexity of the immigrant's situation. In asylum cases like Ogbemudia's, however, it is well established that an IJ does not have an obligation to explain the asylum procedures unless the immigrant expresses some reluctance to return to his homeland. Here, Ogbemudia expressed no objection to returning to Nigeria; to the contrary, he specifically designated that country when asked. Moreover, as we explained above, Ogbemudia's lack of counsel cannot be blamed on the IJ, but is solely the result of Ogbemudia's lack of diligence.

In addition, implicit in *Partible* is the court's concern for the immigrant's lack of knowledge concerning her predicament. Such a concern is not warranted for Ogbemudia, however, who had almost every advantage an alien could have—education, familiarity with the system, local family support and, most importantly, an entire month in which to obtain an attorney. Ogbemudia's predicament, such as it is, has resulted almost entirely from his own negligence and lack of diligence.

Consequently, we conclude that *Partible* provides him no relief.

III

MOTION TO REOPEN

A. *Applicable Law*

There is no statutory provision in the INA requiring the BIA to reopen a deportation proceeding; rather, the BIA has discretionary authority to reopen such a proceeding pursuant to regulations promulgated by the Attorney General.[15] These regulations, however, *prohibit* the BIA from granting motions to reopen unless "the evidence sought to be offered is material *and* was not available and could not have been discovered or presented at the former hearing."[16] This limitation on the BIA's exercise of discretion demonstrates that motions to reopen are disfavored because of the "strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases."[17]

But even if that threshold requirement were met, the BIA could still deny a motion to reopen if the movant fails to establish a prima facie case for the underlying substantive relief sought or, in asylum cases, if the movant does not reaso nably explain his failure to apply for asylum initially.[18] Moreover, if the ultimate grant of relief is discretionary, as is the granting of asylum, "the BIA may leap ahead, as it were, over the two threshold concerns (prima facie case and new evidence/reasonable explanation), and simply determine that even if they were met, the movant would not be entitled to the discretionary grant of relief."[19]

B. *Standard of Review*

Although the BIA characterized Ogbemudia's action as a motion to remand, it considered the motion as one to reopen, noting that the same requirements apply to both motions. As the BIA

---

[15]*INS v. Doherty,* 502 U.S. ----, ----, 112 S.Ct. 719, 724, 116 L.Ed.2d 823 (1992).

[16]8 C.F.R. § 3.2.

[17]*INS v. Abudu,* 485 U.S. 94, 107, 108 S.Ct. 904, 913, 99 L.Ed.2d 90 (1988).

[18]*Id.* at 99, 108 S.Ct. at 909.

[19]*Id.* at 105, 108 S.Ct. at 912.

considered Ogbemudia's appeal as a motion to reopen, and Ogbemudia apparently concurs in that approach, we review the BIA's decision under the standard of review applied to motions to reopen.

Given the discretionary nature of the motion to reopen, the Supreme Court has held "that the abuse of discretion standard applies to motions to reopen "regardless of the underlying basis of the aliens's request [for relief].' "[20]  In refusing to reopen the proceedings, the BIA relied on three separate and independent grounds, any one of which standing alone would be sufficient to support the decision.  Therefore, we need address only the first of these three grounds, as we find no abuse of discretion.

C. *Motion to Reopen*

In its final order, the BIA first denied the motion to reopen on the grounds that Ogbemudia had failed to meet the threshold requirement that the evidence submitted was material and unavailable at the initial deportation proceedings.  The evidence that Ogbemudia submitted with his motion to reopen centered around the murder of his father in Nigeria while conducting a Christian religious service.  The killing occurred in December 1988, while Ogbemudia was in Nigeria.  The factual basis for his fear, therefore, was well and personally known to him and therefore "available" at the time of the initial proceedings.  Also available was all of the evidence submitted to support his claim:  his own statement, the statements of his Houston common-law wife and cousin, and newspaper articles about the religious unrest in Nigeria.  All of this evidence existed and was available at the time of the original deportation proceeding.

In addition, the BIA found unreasonable Ogbemudia's claim that he did not seek asylum initially because he was unaware that he had that option.  The BIA noted that Ogbemudia had an American education and that he was familiar with the deportation and criminal justice systems as a result of his prior deportation and criminal convictions.  Moreover, when the IJ asked Ogbemudia to designate his destination for deportation, Ogbemudia designated Nigeria without expressing any concern for his safety.

---

[20]*Doherty,* --- U.S. at ----, 112 S.Ct. at 725 (quoting *Abudu,* 485 U.S. at 104-05, 108 S.Ct. at 911-12).

In view of these factors, we find that the BIA did not abuse its discretion in failing to reopen the proceedings. Ogbemudia had the opportunity to seek asylum at his initial proceeding, and he has presented no compelling reason for his failure to do so. More importantly, he has failed to overcome the basic regulatory barrier limiting the BIA's authority to reopen a proceeding to situations in which the detainee submits material evidence that was previously unavailable.

Unquestionably, the BIA may not reopen a deportation proceeding unless the evidence was material and unavailable at the original proceeding. As Ogbemudia has failed to meet the threshold requirement, he can advance no argument that would entitle him to the relief he seeks. Therefore, we need not analyze the remaining grounds on which the BIA based its denial of the motion to reopen.

For the foregoing reasons, the decision of the BIA is AFFIRMED.