# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 3, 2008

Charles R. Fulbruge III
Clerk

No. 06-60926
Summary Calendar

GILBERTO JOSE VENTURINI

Petitioner

V.

MICHAEL B MUKASEY, U S ATTORNEY GENERAL

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A97 926 232

Before WIENER, GARZA, and BENAVIDES, Circuit Judges.
PER CURIAM:[*]

Gilberto Jose Venturini ("Venturini"), a native and citizen of Venezuela, has filed a petition for review of an order by the Board of Immigration Appeals (BIA). The BIA denied his motion to remand to the immigration judge (IJ), and affirmed and adopted the IJ's opinion finding Venturini ineligible for asylum or withholding of removal.[1] The BIA also determined that the hearing before the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The BIA's order also mentioned the Convention Against Torture ("CAT"). However, Venturini did not request relief under CAT in his application, and the IJ did not address the CAT. As it appears that Venturini never requested relief under the CAT, and because he has not argued for relief under the CAT in his briefing before us, we do not address the applicability of the Convention to Venturini's

IJ did not violate Venturini's right to due process. For the following reasons, we deny the petition.

I

Venturini claims that the Venezuelan government under President Hugo Chavez persecuted him based on his involvement in a political party that opposes Chavez. Because Chavez is still in power, he also claims a fear of future persecution based on his political beliefs. The IJ found that Venturini was not entitled to asylum relief or withholding of removal based on past persecution or a fear of future persecution. The following summarizes the facts underlying Venturini's claims of persecution.

Prior to coming to the United States, Venturini worked as a petroleum engineer for Petroleos de Venezuela S.A. ("PDVSA"), the government-owned oil company of Venezuela. Venturini was also a member of Accion Democratica, a Venezuelan democratic political party that opposes the policies of President Chavez. In order to pressure Chavez to resign, Venturini and a number of workers at PDVSA engaged in a strike. Venturini also participated in efforts to hold a recall election in hopes of removing Chavez. Within the next two months PDVSA fired the workers who participated in the strike, including Venturini.

In December 2002, Venturini and other workers gathered in a public square to protest Chavez. During the protest, National Guard troops arrived and violence ensued. National Guard troops beat Venturini with billy clubs and fired tear gas to dispel the protestors. Venturini was hospitalized for one night with bruises, a broken rib, and breathing problems stemming from the Guard's use of tear gas. Six days after this attack Venturini left Venezuela for the United States, but returned to Venezuela shortly thereafter without seeking asylum. After returning to Venezuela in December 2002, a group of individuals

---

case. See Calderon-Ontiveros v. INS, 809 F.2d 1050, 1052 (5th Cir. 1986) (noting that we do not examine issues a party fails to raise on appeal "absent the possibility of injustice so grave as to warrant disregard of usual procedural rules").

believed by Venturini to be members of the Bolivarian Circles gathered in front of Venturini's home, shot weapons into the air, beat his car with steel pipes, and threatened him. Venturini claims that the Bolivarian Circles are para-military groups who support Chavez. Venturini testified that he was attacked again by the National Guard in January 2003, as he participated in a protest against Chavez and Chavez's decision to fire the striking PDVSA workers. Venturini testified that the National Guard beat him about the legs with a club, and that he again suffered breathing problems as a result of tear gas. In February 2003, a fourth incident occurred. According to Venturini, he and other members of Accion Democratica were preparing for a rally when members of the Bolivarian Circles entered the room and began beating people with steel pipes. Venturini stated that he remembered one of the attackers calling him by name during the fighting, but that he eventually lost consciousness. He later awoke in his home. Venturini did not seek medical attention. He did, however, decide to leave the country.

Venturini admitted to his removability and sought relief in the form of asylum and withholding of removal. As noted above, the IJ found that Venturini had not established past persecution or a well founded fear of future persecution based on his political beliefs. In reaching this conclusion, the IJ found that Venturini's claims of threats and mistreatment, while credible, did not amount to persecution. In finding Venturini's fear of future persecution to be unreasonable, the IJ relied on the record but also took notice of recently changed conditions in Venezuela which he felt calmed the political situation: specifically the resolution of the PDVSA strike, and Chavez's overcoming the recall effort. Venturini appealed the decision to the BIA. The BIA adopted and affirmed the IJ's conclusion as to asylum and withholding of removal. Before the BIA, Venturini argued that the hearing before the IJ was unfair. He also sought to have the BIA remand his asylum determination to the IJ based on new evidence. The BIA denied both of these claims and dismissed his appeal.

II

Venturini asserts again on appeal that the hearing before the IJ was not fair, and thus that the BIA erred in denying his due process claims. He also contends that the IJ and the BIA erred in finding him ineligible for asylum. Finally, he argues that the BIA erred in denying his motion to remand.

We review an immigration court's rulings of law de novo and its findings of fact to determine if they are supported by substantial evidence in the record. Zhu v. Gonzales, 493 F.3d 588, 594 (5th Cir. 2007). We review Venturini's due process challenge de novo. Anwar v. INS, 116 F.3d 140, 144 (5th Cir. 1997). The decision that an alien is ineligible for asylum is a finding of fact, which we will reverse only if the evidence compels a conclusion contrary to that reached by the BIA. Abdel-Masieh v. INS, 73 F.3d 579, 583 (5th Cir. 1996). We review the BIA's decision to deny a motion to remand or reopen "under a highly deferential abuse-of- discretion standard." Singh v. Gonzales, 436 F.3d 484, 487 (5th Cir. 2006). We will affirm the BIA's decision denying such a motion as long as it is not arbitrary, capricious, racially invidious, or utterly without foundation in the evidence. See id. The BIA denied Venturini's application for asylum and withholding of removal and ordered Venturini removed by adopting the IJ's opinion and supplementing that with its own opinion. Accordingly, we review the decisions of the BIA and the IJ. See Zhu, 493 F.3d at 593 (noting that we review the IJ's decision when it affects the BIA's decision).

III

A

Venturini has not shown that the BIA erred in denying relief based on his due process arguments. Venturini argues that he was denied due process of law because the IJ: (1) pressured him to forego the use of a Spanish translator at his immigration hearing; (2) evinced bias against him by cross-examining him, calling him a "big coward"; (3) and improperly took official notice of changes that took place in Venezuela after the immigration hearing, but prior to the entry of

his decision. An alien's right to procedural due process is violated only if he is substantially prejudiced by an immigration court's actions. See Calderon-Ontiveros v. INS, 809 F.2d 1050, 1052 (5th Cir. 1986). Each of Venturini's due process arguments is without merit.

First, the record does not support Venturini's claim that the IJ pressured him to proceed in English. Prior to beginning his hearing, Venturini stated that he had no problem proceeding in English, and that he did not need an interpreter. Venturini never requested the interpreter return, despite the IJ's statement that any time Venturini felt uncomfortable proceeding in English, the interpreter could return. Venturini argues that he was "at a deficit in explaining the events that led up to his application for asylum" because Spanish is his native language. Venturini has identified no fact or legal argument not communicated that would have compelled the granting of relief had it been communicated. Absent a showing to that effect, Venturini cannot show substantial prejudice and his due process challenge fails. See Paraham v. INS, No. 94-41021, 1995 WL 371091 at *2-*3 (5th Cir. June 6, 1995); 5TH CIR. R. 47.5.3 (stating that unpublished opinions issued prior to January 1, 1996 have precedential value).

Second, Venturini claims bias on the part of the IJ. To show bias sufficient to undermine the fairness of an asylum hearing, the BIA has recognized that an alien must show the IJ has a "personal bias" stemming from an "extrajudicial source" or that the IJ's conduct demonstrates "pervasive bias and prejudice." Matter of Exame, 18 I & N Dec. 303, 306 (BIA 1982). The IJ questioned Venturini directly with regard to his political convictions and his leaving Venezuela. See 8 U.S.C. § 1229a(b)(1) (authorizing IJ to "interrogate, examine, and cross-examine the alien"). In response to Venturini's testimony, the IJ stated rhetorically to Venturini's counsel that "it does seem like he's a big coward or he is not genuine when he says he wants to fight for the party but then leaves the country." The judge's statement was isolated and appears to

5

have been an attempt to clarify Venturini's motivations for leaving the country. Any prejudice exhibited by this statement was not pervasive, and it did not arise from an extrajudicial source. As such, Venturini has not established a due process violation based on bias of the IJ.

As to Venturini's third due process claim, we have recognized that agencies are given "wide latitude in taking official notice" of "commonly acknowledged facts" such as a change in government or country conditions in an alien's country of origin. See Rivera-Cruz v. INS, 948 F.2d 962, 966-67 (5th Cir. 1991) (recognizing BIA's ability to take official notice of numerous facts, including changed country conditions). Facts such as the end of the PDVSA strike and the result of the 2004 recall referendum are the sorts of "commonly acknowledged facts" of which official notice may be taken. See id. Despite the fact that Venturini could not challenge before the IJ the facts of which the IJ took official notice, he could challenge those facts before the BIA. And he also had the ability to file a motion to reopen the BIA's decision and a subsequent right to appeal. These mechanisms are sufficient to satisfy Venturini's right to a fair asylum hearing. Id. at 968. Further, based on the other findings made by the IJ and BIA in support of the asylum determination, Venturini cannot show substantial prejudice based on the noticed facts. Therefore, Venturini's due process rights were not violated when the IJ took official notice of changed conditions in Venezuela.

B

The IJ found that Venturini had not established past persecution or a well-founded fear of future persecution based on his political opinion, and thus that he was not eligible for asylum or withholding of removal.

> To qualify for asylum, an alien must be a "refugee." See 8 C.F.R. § 1208.13(a). The Immigration and Naturalization Act defines a refugee as a person unable to return to his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group,

> or political opinion." 8 U.S.C. § 1101(a)(42)(A). Past persecution entails harm inflicted on the alien on account of a statutorily enumerated ground by the government or forces that a government is unable or unwilling to control. 8 C.F.R. § 1208.13(b)(1). The alternative asylum ground, a well-founded fear of persecution, results when a reasonable person in the same circumstances would fear persecution if deported. Jukic v. INS, 40 F.3d 747, 749 (5th Cir.1994).

Tesfamichael v. Gonzales, 469 F.3d 109, 114 (5th Cir. 2006).

The record does not compel a contrary conclusion to that reached by the IJ regarding past persecution. Venturini claimed persecution because he was fired as a result of his political opinion. The government fired Venturini and a number of other workers at PDVSA for engaging in a strike)) Venturini claims the workers struck to protest the Chavez regime. He testified that he believes he will be blacklisted from working in Venezuela's oil industry as a result of his participation in the strike. He also stated that he would not be able to work as a professional despite his holding a number of advanced degrees. Persecution "does not encompass all treatment that our society regards as unfair, unjust or even unlawful or unconstitutional." Id. While the "deliberate imposition of severe economic disadvantage" may constitute persecution, Venturini's being prevented from working in the oil industry does not amount to such extreme conduct. Id. Therefore, the IJ's finding that Venturini's firing did not amount to persecution is supported by substantial evidence.

Venturini also testified that he was beaten by members of the National Guard during two protests. The IJ found that the injuries Venturini suffered were not severe enough to amount to persecution. Venturini testified that he received bruises, a broken rib, and had trouble breathing as a result of tear gas being used to dispel the protestors. However, after being hospitalized overnight for these injuries, he traveled to the United States some six days later. He did not seek asylum at that time, and in fact returned to Venezuela shortly thereafter. See Mikhael v. INS, 115 F.3d 299, 304 & n.4 (5th Cir. 1997) (listing

7

cases where poor treatment was found insufficient to establish persecution). The IJ also found that Venturini had not suffered harm at the hands of the National Guard on account of his political beliefs. He concluded that Venturini's injuries were suffered when the National Guard was forced quell the dangerous, mob-like situations created when demonstrations involving members of multiple political parties became violent. The State Department's 2003 Country Report on Human Rights Practices, as well as other documentary evidence in the record, supports the IJ's finding that the violence carried out against protestors by National Guard members resulted from the general unrest and violent situations surrounding protests rather than any particular protestor's political beliefs. See Abdel-Masieh, 73 F.3d at 584 (noting that no evidence contradicted the finding that alien was arrested "simply because he was at the front of the crowd" during a demonstration). The record does not compel a contrary conclusion as to Venturini's injuries suffered at the hands of the National Guard.

Venturini also testified that he was beaten and harassed by members of the Bolivarian Circles, a group that supports President Chavez, on account of his anti-Chavez involvement. However, the IJ found that Venturini had not credibly identified his attackers as part of the Bolivarian Circles. Venturini identified his attackers as members of the Bolivarian Circles merely based on his own assessment that they "are violent people and they have guns most of the time and they're in support of Chavez." The IJ also found that Venturini had not established that the actions alleged to have been taken by the Bolivarian Circles were sanctioned by the government, or that the government was unable or unwilling to control the Bolivarian Circles. See Tesfamichael, 469 F.3d at 113 (noting that persecution must be inflicted by the government or forces the government is unwilling or unable to control). Based on Venturini's testimony, the attacks by the Bolivarian Circles were reported to the police who undertook investigations) ) Venturini never indicated that the police were unwilling to protect him. The 2003 Country Report, included in the original record before the

IJ, does not identify the Bolivarian Circles, nor does it indicate that any pro-Chavez groups carried out violence that the government was unwilling or unable to control. The record does not compel the conclusion that Venturini suffered persecution at the hands of violent groups that the government was unable or unwilling to control.[2]

Neither does the record compel a conclusion contrary to the IJ's finding regarding Venturini's fear of future persecution. Because Venturini had not established past persecution, he was not entitled to a presumption of future persecution. See 8 C.F.R. § 208.13. To prove a well-founded fear of persecution, a petitioner must show that a "reasonable person in the same circumstances would fear persecution if deported." Mikhael, 115 F.3d at 304. The IJ found that the record did not establish a reasonable fear of future persecution on the part of Venturini. The following evidence undermines Venturini's claim of future persecution, such that we are not compelled to find his fear reasonable. Venturini testified that his political party is one of the largest in Venezuela, that members of his political party serve in the national government, and that he receives near-daily e-mail communication from party members. Also, his family remains in Venezuela unharmed. See Eduard v. Ashcroft, 379 F.3d 182, 193 (5th Cir. 2004); Matter of A-E-M, 21 I. & N. Dec. 1157, 1160 (BIA 1998). We need not consider whether the facts of which the IJ took official notice support this conclusion. Even ignoring these facts, the record does not compel us to reach a conclusion different than that reached by the IJ as to Venturini's fear of future persecution.

---

[2] Venturini also argues on appeal that the IJ failed to take into account the cumulative effect of the multiple beatings he received, the loss of his job, and the threats and harassment toward him. We have recognized, at least implicitly, that past persecution may be established based on the cumulative effect of multiple threats and attacks, even if no single incident is sufficient. See Eduard v. Ashcroft, 379 F.3d 182, 188 (5th Cir. 2004) (citing Matter of O-Z- & I-Z-, 22 I. & N. Dec. 23, 26 (BIA 1998). Venturini bears the burden of showing that the IJ improperly analyzed each incident in isolation. Id. The IJ's decision indicates that the IJ evaluated each of the individual incidents, as well as the impact of the incidents as a whole in making a determination as to past persecution. Therefore, the IJ did not err in this regard.

In conclusion, we find the denial of Venturini's application for asylum to be supported by substantial evidence. As he cannot satisfy the standard for asylum, Venturini cannot meet the more demanding standard for withholding of removal based on a likelihood of future persecution. See Faddoul v. INS, 37 F.3d 185, 188 (5th Cir. 1994).

C

Before the BIA, Venturini filed a motion to remand accompanied by further documentary evidence to support his claim for asylum. When a motion to remand challenges an IJ's ruling based on new evidence, it is to be treated as a motion to reopen. See Ramchandani v .Gonzales, 434 F.3d 337, 340 n. 6 (5th Cir. 2005). The BIA must deny a motion to reopen if it finds that the movant has not introduced previously unavailable , material evidence or if the movant has not established a prima facie case for the underlying substantive relief sought. See Ogbemudia v. INS, 988 F.2d 595, 599-600 (5th Cir. 1993). Even if a movant establishes these threshold requirements, the BIA may deny a motion to reopen if the BIA determines that "the movant would not be entitled to the discretionary grant of relief." Id. at 600 (internal quotation marks and citation omitted).

Venturini submitted three documents dated prior to his hearing before the IJ. Venturini has provided no explanation as to why he could not have obtained and presented these reports at his removal hearing. The remaining documents of which Venturini sought review on remand, including the 2005 Country Report, do not contain information materially different from that considered by the IJ. In fact, the 2005 Country Report can easily be read to support the IJ's conclusion that the situation is Venezuela is less volatile than when Venturini left the country. Accordingly, the BIA did not abuse its discretion in denying Venturini's motion to remand based on this new evidence.

For the foregoing reasons, we DENY the petition for review.