# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 31, 2020

Lyle W. Cayce
Clerk

No. 18-60827

Xhino Gjetani,

*Petitioner,*

*versus*

William P. Barr, U.S. Attorney General,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A216 285 464

Before Dennis, Southwick, and Ho, *Circuit Judges*.
James C. Ho, *Circuit Judge*:

Xhino Gjetani, an Albanian citizen, seeks asylum on the ground that members of his country's Socialist Party threatened to kill him three times, and physically attacked him on one of those occasions, due to his support for the Albanian Democratic Party. What they did to him is repugnant. No person should have to endure what he suffered. But that does not entitle him to asylum under our laws. Our Nation's immigration policy is determined by the political branches, not the courts.

Congress has made clear that asylum is reserved for people who are the specific targets of "persecution." That means a systematic, sustained pattern of assaults or other acts of oppression—not individual or even a handful of assaults or threats. Furthermore, Congress has vested broad discretion in the Executive Branch to make asylum determinations, and instructed courts to give significant deference to Executive decisions.

That deference is required here. Gjetani suffered three threats and one attack during a short period of time. Had those incidents continued, he might very well have stated a case of persecution. But he experienced no further threats or attacks for the following six months, before he decided to leave Albania. Based on the record before them, both the Immigration Judge and the Board of Immigration Appeals concluded that these facts did not amount to persecution. Our precedents leave us no choice but to defer to that Executive Branch determination. Accordingly, we deny the petition for review in part and dismiss the petition in part.

## I.

Gjetani is an Albanian national and a supporter of the Albanian Democratic Party. While in Albania, he was, according to his testimony, threatened three times and assaulted once on account of his political beliefs by members of the rival Socialist Party.[1]

The first time he was threatened, on June 15, 2017, Gjetani and his friends were publicly carrying flags for the Democratic Party, when they

---

[1] The dissent says that Gjetani was threatened four times, rather than three. The discrepancy results from the dissent's decision to treat one of his three threats as two separate incidents. We defer to the IJ, BIA, and Gjetani himself in stating that he was threatened three times. For example, his asylum interview contains the following exchange between Gjetani and the asylum officer: "Q: How many times have you been threatened? A: I've been threatened three times."

encountered members of the Socialist Party. The Socialist contingent confiscated their flags and threatened to kill Gjetani if he carried Democratic Party flags again. Gjetani attempted to file a report with the police, but was rebuffed.

Three days later, Gjetani was at home with his family when Socialist Party members came canvassing for votes. Upon learning that Gjetani and his family supported the Democratic Party, the Socialist Party members attacked Gjetani and his father. Gjetani suffered injuries to his left knee and toe. According to Gjetani, four men assaulted him and his father using a belt and a "sharp metal object." The Socialist Party members said they would kill Gjetani if he did not vote as directed. Gjetani went to the hospital, received stitches, and was discharged that day. He was not prescribed any pain medication.

A week later, on Election Day in Albania, Gjetani and his family were traveling to vote. They were confronted by Socialist Party members who demanded they vote for the Socialists or else face death.

Six months later, on December 20, 2017, Gjetani left Albania. He filed an application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). Gjetani explained that he feared he would be persecuted, beaten, and killed because of his political opinions if he returned to Albania.

The Immigration Judge (IJ) held an evidentiary hearing on June 4, 2018. The IJ concluded that these incidents did not constitute persecution. And although Gjetani had a subjective fear of future harm, the IJ found that his fear was not objectively reasonable. The IJ also denied relief under withholding of removal and the CAT.

The Board of Immigration Appeals (BIA) adopted and affirmed the IJ's decision and dismissed the appeal. Gjetani now seeks review in federal court.

## II.

We generally review only the asylum decision of the BIA, although, as here, we will consider the IJ's decision if it influenced that of the BIA. *See Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009).

Asylum is available to a "refugee" at the discretion of the government. 8 U.S.C. § 1158(b)(1). A "refugee" is "any person . . . who is unable or unwilling to return to . . . [his] country because of persecution or a well-founded fear of persecution on account of [a protected ground]." *Id.* § 1101(a)(42). To establish eligibility for asylum, Gjetani was required to demonstrate either past persecution or a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b). But even proving eligibility "does not automatically entitle a refugee to asylum." *Chen v. Gonzales*, 470 F.3d 1131, 1135 (5th Cir. 2006). Federal law makes clear that "the Attorney General's discretionary judgment whether to grant [asylum] relief [to a refugee] shall be conclusive unless manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D).

As Gjetani acknowledges, "[w]e use the substantial evidence standard to review the IJ's factual conclusion that an alien is not eligible for asylum." *Zhao v. Gonzales*, 404 F.3d 295, 306 (5th Cir. 2005). Under this deferential standard, we will grant a petition for review only when the record evidence "compels" a conclusion contrary to the agency's determination. *Id.* (citing *INS v. Elias–Zacarias*, 502 U.S. 478, 481 n.1 (1992)). "The applicant has the burden of showing that the evidence is *so compelling* that *no reasonable factfinder* could reach a contrary conclusion." *Chen*, 470 F.3d at 1134 (emphasis added). After all, Congress has declared that "administrative

findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Moreover, our circuit precedents (which we are, of course, duty-bound to follow) make clear that we use the "substantial evidence" standard, even when the agency determines the alien is credible and accepts his version of the facts. *See*, *e.g.*, *Tamara-Gomez v. Gonzales*, 447 F.3d 343, 347 (5th Cir. 2006) ("[r]eviewing these findings under the substantial evidence standard" when an alien was deemed "credible" and "'accepting his account'" of the facts).[2]

## A.

First, some preliminary procedural issues. Gjetani argues that the IJ used the wrong legal standard in evaluating past persecution, and that the IJ's persecution finding failed to sufficiently analyze the extremity of the harm he

---

[2] The dissent's contention that we should apply de novo rather than substantial evidence review is thus contradicted by circuit precedents such as *Tamara-Gomez*.

In response, the dissent contends that *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062 (2020), abrogates our substantial evidence review circuit precedents. It does not. *Guerrero-Lasprilla* addressed the scope of the judicial review provision in 8 U.S.C. § 1252(a)(2)(D)—namely, "whether the statutory phrase 'questions of law' includes the application of a legal standard to undisputed or established facts." *Id.* at 1068.

But the issue here is not whether we have *jurisdiction* to review Gjetani's persecution claim under § 1252(a)(2)(D) (we do), but what *standard of review* we must apply to his claim under § 1252(b)(4)(B). *See*, *e.g.*, *Tamara-Gomez*, 447 F.3d at 347 (applying substantial evidence review under § 1252(b)(4)(B)). These are distinct issues— which explains why the majority in *Guerrero-Lasprilla* does not even mention, let alone purport to construe, § 1252(b)(4)(B). And of course, only our en banc court can "overrule the decision of a prior panel unless such overruling is unequivocally directed by controlling Supreme Court precedent"—a standard plainly not met here. *United States v. Zuniga-Salinas*, 945 F.2d 1302, 1306 (5th Cir. 1991).

So it is not surprising that even Gjetani acknowledges that his appeal is subject to substantial evidence, not de novo, review.

suffered in light of the entire record. Neither of these claims was raised before the BIA. Gjetani has thus failed to exhaust his administrative remedies as to those claims. We therefore lack jurisdiction to consider them. *See Omari v. Holder*, 562 F.3d 314, 318 (5th Cir. 2009) ("Petitioners fail to exhaust their administrative remedies as to an issue if they do not first raise the issue before the BIA."). These claims are dismissed.[3]

## B.

Gjetani contends that the attack and death threats against him amounted to persecution, and that the BIA erred in concluding otherwise.[4]

Persecution is often described in the negative: It is *not* harassment, intimidation, threats, or even assault. Persecution is a specific term that "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Majd v. Gonzales*, 446 F.3d 590, 595 (5th Cir. 2006) (quoting *Al–Fara v. Gonzales*, 404 F.3d 733, 739 (3rd Cir. 2005)). Persecution requires more. As our distinguished colleagues from courts of appeals across the country have elaborated, it has the quality of a *sustained*, systematic effort to target an individual on the basis of a protected ground. *See Bocova v. Gonzales*, 412 F.3d 257, 263 (1st Cir. 2008), *superseded in unrelated part by* 8 C.F.R. § 1240.26(i) (noting persecution is characterized as "mistreatment [that] can be said to be systematic rather than reflective of a series of isolated incidents"); *Lie v. Ashcroft*, 396 F.3d 530, 537 (3rd Cir.

---

[3] Gjetani also sought relief before the IJ and BIA under the Convention Against Torture. But he has not challenged the denial of that relief before this court. We therefore treat that claim as abandoned. *See Soadjede v. Ashcroft*, 324 F.3d 830, 833 (5th Cir. 2003).

[4] Gjetani also challenges the BIA's reliance on *Matter of Acosta*, 19 I. & N. Dec. 211, 222 (BIA 1985), *overruled in part on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987), for allegedly setting out the wrong legal standard for persecution. We find no error. The BIA correctly stated the governing legal standard.

2005), *superseded in unrelated part by* 8 U.S.C. § 1158(b)(1)(B)(i) (holding a "pattern or practice" of persecution requires it be "systemic, pervasive, or organized") (citation omitted); *Baharon v. Holder*, 588 F.3d 228, 232 (4th Cir. 2009) (finding "[a] key difference between persecution and less-severe mistreatment is that the former is 'systematic' while the latter consists of isolated incidents"); *Wijono v. Gonzalez*, 439 F.3d 868, 874 (8th Cir. 2006) (holding "persecution of [a] group must be 'systemic, pervasive, or organized'") (citation omitted). *See also Woldeyes v. Ashcroft*, 83 F. App'x 586, 588 (5th Cir. 2003) (per curiam) (finding no persecution absent "evidence of systematic persecution by the government").

So even those subject to brutal physical attack are not necessarily victims of "persecution." Courts have condemned all manner of egregious and even violent behavior while concluding they do not amount to persecution. *See*, *e.g.*, *Singh v. Barr*, No. 19-60150, 2020 WL 3407167, at *3 (5th Cir. June 19, 2020) (per curiam) (no persecution when an individual was twice beaten, including once until unconscious and resulting in a swollen shoulder and legs); *Venturini v. Mukasey*, 272 F. App'x 397, 402–03 (5th Cir. 2008) (per curiam) (no persecution when an individual was beaten twice and hospitalized for bruises, a broken rib, trouble breathing from tear gas, and overnight hospitalization); *Rojas v. INS*, 937 F.2d 186, 188 (5th Cir. 1991) (per curiam) (no persecution when an individual was "arrested, beaten, and tortured"); *see also Reyes-Morales v. Gonzales*, 435 F.3d 937, 942 (8th Cir. 2006) (no persecution when an individual was beaten unconscious and left with "a physical deformity and several scars" while his "friend was killed during this incident"); *Dandan v. Ashcroft*, 339 F.3d 567, 573–74 (7th Cir. 2003) (no persecution when an individual was kidnapped, detained for three days without food, and extensively beaten, resulting in facial swelling).

When we *do* have evidence of regular and methodical targeting, by contrast, we have not hesitated to find persecution. Take *Tamara-Gomez v.*

*Gonzales*, 447 F.3d 343 (5th Cir. 2006). Henry Tamara-Gomez was a Colombian helicopter mechanic who accompanied a team of Colombian National Police (CNP) officers on a retrieval mission to recover the bodies of fallen CNP comrades killed in a remote jungle village by terrorists in the Fuerzas Armadas Revolucionarias de Colombia (FARC). *Id.* at 345. Soon after the mission concluded, Tamara-Gomez began receiving death threats against him and his family. *Id.* at 346. The calls went to his cell phone, and then spread to his home phone. *Id.* Fearing for his family's safety, Tamara-Gomez uprooted his wife and children and moved them away. *Id.* Within weeks, the calls began again at the new house, now accompanied by demands for money. *Id.* Soon after, a bicycle bomb detonated in his family's new neighborhood, killing five civilians. *Id.* And all the while, FARC was systematically hunting down and executing Tamara-Gomez's retrieval team members and their families. *Id.*

*That* is prototypical persecution. The refugee faced an organized, relentless campaign of intimidation, extortion, and murder. Gjetani's treatment at the hands of Socialist Party members cannot be said to be the same. The three occasions on which he was threatened—one of which resulted in physical injury—did not necessarily reflect the kind of pattern of sustained pursuit that persecution requires. Instead, the IJ concluded that these acts were one-off incidents related to the one-time event of the Albanian election, and unlikely to recur.

The beating and threats suffered by Gjetani are similar to those endured in *Singh v. Barr*, No. 19-60150, 2020 WL 3407167 (5th Cir. June 19, 2020) (per curiam). Singh, a member of the minority Mann Party in India, was beaten twice—including once to the point of losing consciousness—and received death threats by members of the rival Badal Party. *See Singh*, 2020 WL 3407167, at *1. But we concluded that Singh had not demonstrated he suffered the requisite level of harm to constitute persecution. *See also Singh*

*v. Whitaker*, 751 F. App'x 565, 567 (5th Cir. 2019) (per curiam) (no persecution where a member of a minority political party was beaten twice); *Gill v. Barr*, 765 F. App'x 225, 225 (9th Cir. 2019) (per curiam) (no persecution where a member of a minority political party was beaten and threatened with death).

Lastly, we have often taken note of when, as here, an alien has endured a threat or assault but has nevertheless chosen to stay in his home country for a period of time—because the choice to stay tends to weaken the claim of persecution. *See*, *e.g.*, *Panmesri v. Holder*, 313 F. App'x 723, 726 (5th Cir. 2009) (per curiam), *Diaz Flores v. Ashcroft*, 104 F. App'x 418, 419 (5th Cir. 2004) (per curiam); *Hafiz v. Ashcroft*, 69 F. App'x 659 (Table) (5th Cir. 2003) (per curiam). Gjetani remained in Albania until December 20, 2017. He has offered no explanation as to why he elected to stay in Albania for almost half a year after the last instance of threatening behavior, or how he was persecuted when no further threats or attacks took place during that time.

We conclude that the BIA did not err in finding that Gjetani's injuries did not amount to past persecution.

## C.

To establish a well-founded fear of future persecution, an alien must demonstrate "a subjective fear of persecution, and that fear must be objectively reasonable." *Eduard v. Ashcroft*, 379 F.3d 182, 189 (5th Cir. 2004) (citation omitted). The IJ and BIA reasonably concluded that Gjetani failed to show that his subjective fear of persecution on his return to Albania was objectively reasonable. They properly considered the fact that Gjetani's family has not received threats or suffered any physical harm despite remaining in Albania. *See id.* at 193 (noting "the reasonableness of an alien's fear of persecution is reduced when his family remains in his native country

unharmed for a long period of time after his departure"). Further, the IJ and BIA found no evidence in the record to suggest that anyone had been looking for Gjetani in Albania since the election, much less that he was being targeted in the future.

Lastly, Gjetani complains that the IJ and BIA did not consider his expert affidavit stating that he would suffer continued persecution if he remained in Albania. The record belies that claim. It establishes that the IJ gave meaningful consideration to the affidavit—not least by explicitly referencing it in his evidentiary report. *See Abdel-Masieh v. INS*, 73 F.3d 579, 585 (5th Cir. 1996) ("We do not require that the BIA address evidentiary minutiae or write any lengthy exegesis.").

## D.

Gjetani has failed to show error by the IJ and BIA in denying his request for asylum. Because he did not qualify for asylum, Gjetani necessarily did not meet the higher threshold for establishing eligibility for withholding of removal. *See Eduard*, 379 F.3d at 186 n.2.

\* \* \*

Our decision today does not diminish the injury that Gjetani and many other foreign nationals too often suffer in their home countries simply for holding unpopular political beliefs. Perhaps it is little surprise then that so many of them seek refuge in America—a country built on the idea that political disagreements are to be celebrated, rather than repressed. But how our Nation deals with refugees is a political decision for the political branches to make. And Congress has gone out of its way to circumscribe the role of the federal courts in this arena. Accordingly, we must deny the petition in part and dismiss in part.

JAMES L. DENNIS, *Circuit Judge*, dissenting.

I must respectfully disagree with the majority's holding. It would be one thing if the majority simply concluded that the treatment that Xhino Gjetani endured was not severe enough to constitute "persecution," although I would disagree with that assessment. However, the majority also errs by characterizing the Board of Immigration Appeals's (BIA's) determination that the undisputed facts of this case amount to "persecution" within the meaning of 8 U.S.C. § 1101(a)(42)(A) as a "factual conclusion" that is subject to only the deferential "substantial evidence" standard of review. Majority at 4.

To be sure, the BIA's determination that an alien has failed to establish persecution on account of a protected ground *can* be based on factual determinations for which the substantial evidence standard applies. For example, in *INS v. Elias-Zacarias*, the Supreme Court applied the substantial evidence standard to the question of whether the alien had established that any persecution he would face was *because* of his political opinion. *See* 502 U.S. 478, 482 (1992) ("Elias–Zacarias still has to establish that the record also compels the conclusion that he has a 'well-founded fear' that the guerrillas will persecute him *because* of that political opinion, rather than because of his refusal to fight with them." (emphasis in original)). This is because what motivates a group or individual—including a persecutor—is a classic example of a question of fact. *See, e.g., Casarez v. Burlington N./Santa Fe Co.*, 201 F.3d 383, 384 (5th Cir. 2000) ("It is clear that Casarez has met his burden . . . by creating a factual question as to what actually motivated Burlington to terminate his employment.*"); Trevino v. Ramos*, 197 F.3d 777, 781 (5th Cir. 1999) ("The primary issue in this case is the factual question of motivation[.]"); *Nationwide Amusements, Inc. v. Nattin*, 452 F.2d 651, 652 n.1 (5th Cir. 1971) ("The factual sufficiency of the cause of action turns on the motivation of the city officials, a fact question that can only be

determined in the district court."). Similarly, substantial evidence review would apply to the question of past persecution when the BIA's determination was based on a finding that the alien's account was not credible; this, too, is a question of fact—*i.e.*, whether the alien was telling the truth or whether the events the alien recounted actually occurred. *See, e.g., Wang v. Holder*, 569 F.3d 531, 537 (5th Cir. 2009) (applying substantial evidence standard to determination that alien's account of events was not credible).

But none of these factual questions are in play in this case, where the Immigration Judge (IJ) and BIA found Gjetani's account of events credible. Instead, the IJ and BIA's determination was based on the purely legal conclusion that the undisputed facts were not "persecution" within the meaning of 8 U.S.C. § 1101(a)(42)(A). Determining the meaning of "persecution" as it appears in the statute and applying that standard to undisputed facts is a basic matter of statutory interpretation, which is a "quintessential question of law." *Stephens ex rel. R.E. v. Astrue*, 565 F.3d 131, 137 (4th Cir. 2009); *accord Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1068 (2020).[1] The BIA's interpretation is therefore due deference, if at all, only

---

[1] The Majority contends that the rule of orderliness obliges us to apply the substantial evidence standard because panels of this court have in the past employed the "substantial evidence" language when considering the question of persecution where the facts were undisputed. However, any duty we had to follow these precedents was abrogated by the Supreme Court's recent affirmance of the basic principle that "the application of a legal standard to undisputed or established facts" is a "question of law" within the meaning of the Immigration and Nationality Act. *Guerrero-Lasprilla*, 140 S. Ct. at 1068. Although this occurred in the context of a case examining a jurisdictional bar in another portion of the Immigration and Nationality Act, we have long recognized that "we review . . . questions of law *de novo*," including when reviewing the BIA's conclusions regarding persecution. *Rui Yang v. Holder*, 664 F.3d 580, 584 (5th Cir. 2011) (citing *Zhu v. Gonzales*, 493 F.3d 588, 594 (5th Cir. 2007)); *accord, e.g., Shaikh v. Holder*, 588 F.3d 861, 863 (5th Cir. 2009); *Lopez–Gomez v. Ashcroft*, 263 F.3d 442, 444 (5th Cir. 2001); *Eduard v. Ashcroft*, 379 F.3d 182, 186 (5th Cir. 2004) (citing *Mikhael v. INS*, 115 F.3d 299, 305 (5th

to the extent called for under the familiar *Chevron* framework. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 841(1984) (holding that courts should defer to an agency's reasonable interpretation of ambiguous statutes).

Neither the Government nor the majority argues that the term "persecution" as it appears in 8 U.S.C. § 1101(a)(42)(A) is the type of "ambiguous statutory term" for which "the BIA should be accorded *Chevron* deference as it gives [the word] 'concrete meaning through a process of case-by-case adjudication.'"[2] *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 448–449 (1987)). In the absence of such an argument, I would reaffirm that, where the facts are undisputed, "[w]hether a prior assault rises to the level of past-persecution is a question of law that we review *de novo*." *Morales v. Sessions*, 860 F.3d 812, 816 (5th Cir. 2017).

Upon *de novo* review, I believe Gjetani has made a sufficient showing to establish past persecution under our precedents. It is undisputed that Gjetani was subject to repeated in-person death threats and an armed attack that was explicitly tied to his political affiliation. The first death threat was accompanied by the theft of his political paraphernalia. On the second occasion, Gjetani and a family member were severely beaten with a belt and stabbed with sharp metal objects, resulting in a severe enough injury that

---

Cir.1997)); *etc. Guerrero-Lasprilla's* holding that the BIA's application of a legal standard to undisputed facts is a question of law therefore unequivocally settles the question of what standard of review we should apply to such conclusions.

[2] Were that the case, we would examine the BIA's interpretation to decide if it is unreasonable or clearly contrary to congressional intent, as well as whether its application was consistent with the agency's past precedents. *See Cardoza-Fonseca*, 480 U.S. at 448 (holding that the phrase "well-founded fear," which is also found in 8 U.S.C. § 1101(a)(42)(A), is ambiguous).

Gjetani required stitches. And on the third and fourth occasions, which occurred on the same day, the death threats were expressly tied to Gjetani's vote for the political party of his choice. Gjetani repeatedly attempted to seek protection from law enforcement, but each time the police refused, citing his political affiliation.

We have indeed stated that persecution "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Eduard v. Ashcroft*, 379 F.3d 182, 187 n.4 (5th Cir. 2004) (citation omitted). But Gjetani's treatment was not isolated or unaccompanied by physical punishment, and it was more severe than what this court has identified as persecution in past cases. For instance, in *Tamara-Gomez v. Gonzales*, 447 F.3d 343, 348 (5th Cir. 2006), which the majority discusses, we found that the IJ had erred in determining that the petitioner had not established persecution based on repeated credible death threats and vandalism to his home. Unlike the present case, the petitioner had not suffered physical harm that would corroborate the death threats. *See id.* Gjetani has indisputably suffered greater harm to his person than the petitioner in *Tamara-Gomez*, and the treatment should likewise qualify as persecution.

Because a rebuttable presumption of future persecution is created when a petitioner establishes past persecution, *see* 8 U.S.C. § 208.13(b)(1), the remainder of the BIA's reasoning cannot stand. Accordingly, I respectfully dissent.