**UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,**

v.

**Nolberto ZUNIGA–SALINAS, Defendant–Appellant, Cross–Appellee.**

Nos. 90–2773, 90–2824.

United States Court of Appeals, Fifth Circuit.

Oct. 16, 1991.

Richard J. Gonzalez, Laredo, Tex. (court-appointed), for defendant-appellant, Salinas–Zuniga.

Paula Offenhauser, Jeffery A. Babcock, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., Houston, Tex., Patty M. Stemler, Deputy Chief, Appellate Section, U.S. Dept. of Justice, Main Justice Dept., Washington, D.C., for plaintiff-appellee U.S. in No. 90–2773.

Jeffery A. Babcock, Asst. U.S. Atty., Stephen S. Morris, U.S. Atty., Mark M. Dowd, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellant U.S. in No. 90–2824.

Before WISDOM, JOLLY, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Nolberto Zuniga–Salinas ("Salinas") appeals his conviction for possession of marihuana with intent to distribute, on the ground that the evidence was insufficient to support the jury's verdict, and also appeals the district court's denial of his motion for a new trial based upon the inadequacy of his counsel. The government cross-appeals the district court's granting of Salinas's motion for acquittal after the jury had found him guilty of conspiracy but had acquitted his alleged co-conspirator. We affirm.

## I.

At approximately 5:00 a.m. on Sunday, June 25, 1989, United States Border Patrol Agents Michael Dolan, Danny Ramirez, and Javier Gonzalez saw a black pickup truck heading north at a high speed on Highway 16 toward Hebbronville, Texas. Because they had only seen about eight cars heading in that direction since their shift began at midnight and the truck was traveling so fast, the agents followed it. When the driver of the truck, Salinas, saw the patrol car turn around to follow him, he pulled off the highway onto the grassy shoulder and slowed down. He then returned to the highway and continued north for about a mile, until the agents caught up with him and stopped his truck.

Recognizing Salinas as someone who had passed through their checkpoint two nights before at 2:00 a.m., the agents asked him where he was going. He told them that he was from Pharr, Texas, and that he was going to meet his lawyer in Hebbronville. When the agents told him that there was a more direct way to that city, he responded that he was coming from a party in Zapata, Texas, where he had been drinking. The agents then reminded Salinas that it was Sunday and that his lawyer's office would probably be closed; Salinas replied that he was going to the lawyer's home, but upon further questioning he admitted that he did not know where the attorney lived.

While looking at the truck, the agents noticed that its wheel wells were covered with mud and grass and that the passenger door was ajar. Salinas explained that the door was broken, but one of the agents closed it several times and found it to be working properly. Salinas said that he did not know why the door was now working. He also told the agents that he pulled off the highway when he saw their car because he had planned to turn around and talk to them, as he believed that the agents were harassing him. Apparently, Salinas had been stopped at a border crossing a few days earlier and had had his truck temporarily seized.

While Ramirez and Gonzalez spoke to Salinas, Dolan returned to the grassy area where Salinas had pulled his truck off the road. According to Dolan's testimony, soon after he arrived at the truck tracks he found a burlap bag wrapped in plastic that

exposed marihuana. Although it had rained most of the night, the bundle was dry. Dolan then radioed the other agents, but they already had released Salinas. They then radioed ahead to the Hebbronville checkpoint, where other agents arrested him. At the checkpoint, a narcotics detection dog alerted to both the cab and the bed of the truck, indicating, according to its handler, that marihuana had been present within the last two or three days.

At about 8:00 a.m., after dropping off Ramirez and Gonzalez at the Hebbronville checkpoint, Dolan returned with two other officers to the grassy area. He then noticed that the tire tracks from Salinas's truck were about one hundred yards long and that plastic packages of marihuana were strewn the length of the tracks. The agents ultimately collected about 144 pounds of marihuana from the grassy area.

While the agents gathered the bags of marihuana, Ruben Olvera–Garcia ("Olvera") came out of the brush nearby and began walking south on Highway 16. When questioned by the agents, he said that he had walked across the border from Mexico, had been walking for several days, and was tired and hungry. He could not show the agents the path in the grass he had made, however, and the agents noticed that he looked fresh and only slightly wet and that his shoes were clean, belying his story of pedestrian hardship. At that time Olvera denied that he knew anything about Salinas or the marihuana.

After the agents transferred him to the checkpoint, Olvera admitted that he was traveling with Salinas. He said that he had met Salinas in a bar in Brownsville and that Salinas offered him $250 to get the marihuana past the Hebbronville checkpoint. Olvera explained that when Salinas spotted the patrol car on Highway 16 and saw it begin to follow the truck, Salinas told Olvera to throw out the marihuana concealed in both the cab and the bed of the truck and to jump off the truck himself. After doing so, Olvera was to stay with the marihuana while Salinas drove ahead to see whether the Hebbronville checkpoint was open. At the station house later, Olvera made a written statement confirming what he had told the officers.

## II.

Salinas and Olvera were charged with conspiracy to possess more than fifty kilograms of marihuana with intent to distribute, in violation of 21 U.S.C. § 846, and with possession of 144 pounds of marihuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). At trial, Olvera testified for the defense and recanted his confession. He stated that he was coming from Houston in a car on the morning of his arrest, when his companions kicked him out of the car south of the checkpoint at about 5:00 a.m. He did not know, though, who had driven him from Houston or what kind of car he had ridden in. Olvera said that he went into the brush because he was drunk and sleepy. He stated that he told the agents that he had been with Salinas only because they were threatening him at the checkpoint, but he admitted that he was not threatened when he made his written statement at the station house.

The jury found Salinas guilty on both counts but acquitted Olvera on both. Salinas was sentenced to ninety months' imprisonment, five years' supervised release, and 250 hours of community service. Following the verdict, Salinas filed a motion for acquittal on both counts. The court denied acquittal on the substantive count but granted it on the conspiracy count, concluding that Fifth Circuit precedent, as enunciated by the panel in *United States v. Sheikh*, 654 F.2d 1057, 1062 (5th Cir. Unit A Sept. 1981), holds that "the conviction of only one defendant will not be upheld when all the other alleged co-conspirators on trial are acquitted." *See also Herman v. United States*, 289 F.2d 362 (5th Cir.), *cert. denied*, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961).

Salinas also filed a motion for a new trial, alleging ineffective assistance of counsel. He claimed that his trial counsel was ineffective because he had failed to photograph the truck to show that the door indeed was damaged. The court denied the motion as untimely under Fed.R.Crim.P.

33, for it was filed more than nine months after the jury's verdict and seven months after the first attorney withdrew as counsel; the court further held that the motion did not fall within the exception to rule 33 for claims based upon the introduction of new evidence.

### III.

Salinas asserts that the government failed to produce sufficient evidence to convict him of the offense. He argues that no marihuana was found in the truck, that no evidence was produced concerning its ownership or how Salinas came into possession of it, that there was no proof that the tire tracks near which the bags were found were made by his tires, that the agents found the drugs several hours after he was stopped, and that no one saw anyone with Salinas in the truck or witnessed the discarding of the bales of marihuana.

When presented with a claim that the evidence was insufficient to support a criminal conviction, we determine whether, viewing the evidence in a light most favorable to the prosecution, a rational jury could have found the substantial elements of the conviction beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Hopkins*, 916 F.2d 207, 212 (5th Cir.1990). The fact that most of the evidence against Salinas was circumstantial does not change that standard of review. *See United States v. Lechuga*, 888 F.2d 1472, 1476 (5th Cir.1989).

Because the evidence was sufficient to support the jury verdict against Salinas, we reject his claim. The government presented evidence indicating that when Salinas saw the agents, he pulled his truck onto the side of the road and had a companion toss off bags of marihuana as the truck was moving slowly, then the other individual jumped off into the brush. Specifically, the jury heard testimony that Salinas was driving the truck; that he slowed down and pulled off the road upon seeing the Border Patrol vehicle following him; that he offered incredible and varying explanations

for the purpose of his trip; that the Border Patrol agents found grass and mud in the tires and wheel wells of the truck, and tire tracks in the wet grassy area over which the truck had allegedly driven; that the passenger door of his truck was not fully closed, as though someone had just hopped out of the truck; that 144 pounds of marihuana, too much for someone to have carried on foot, were found near the tracks his truck apparently made on the grass; that some of the marihuana was found within an hour of the time the truck pulled off the road; that, although it was raining, the marihuana was relatively dry, and thus could not have been in the open for a long time; and that a dog sniff indicated that marihuana had been in the truck recently.

Even without Olvera's written confession, a jury could conclude beyond a reasonable doubt that Salinas was guilty. We thus need not reach the question of the admissibility against Salinas of Olvera's statement implicating both men.

### IV.

Salinas also appeals the district court's denial of his motion for a new trial based upon ineffective assistance of counsel. Although he acknowledges that he filed his motion more than nine months after the seven-day period allowed by rule 33, Salinas contends that because new counsel was not appointed to replace his prior counsel until after the deadline, it was impossible for him to meet it, so the court should have granted him a reasonable additional time to file his claim. He cites *United States v. Cronic*, 466 U.S. 648, 667 n. 42, 104 S.Ct. 2039, 2051 n. 42, 80 L.Ed.2d 657 (1984), for the proposition that a court may consider a motion for a new trial while an appeal of a conviction is pending, but such a proposition, though apparently accurate, does not affect our judgment here.

The defendant in *Cronic* filed his motion for a new trial within the period prescribed by rule 33; Salinas did not. Despite Salinas's argument that he could not have met rule 33's time limit, we are bound by our decision in *United States v. Ugalde*, 861

F.2d 802 (5th Cir.1988), to the effect that where a defendant is aware of the facts giving rise to his ineffectiveness claim during the seven-day period, those facts cannot be considered newly discovered evidence, and the strict limitation of rule 33 controls, even where the defendant could not have known the legal significance of those facts. *Id.*

Salinas attended the trial. He saw what his attorney put into evidence, and he must have known, since it is in the record, that his attorney failed to photograph the door of his truck. Thus, the claim of ineffective assistance of counsel was not based upon newly discovered evidence, and the seven-day limitation of rule 33 applies. The district court did not err in denying the motion for a new trial.[1]

## V.

On cross-appeal, the government charges that the district court erred in granting Salinas's motion for judgment of acquittal on the conspiracy charge. The government argues that, as other circuits have acknowledged, under *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), consistency in conspiracy verdicts is no longer required; thus Salinas could be found guilty of conspiring with Olvera even though Olvera was found not guilty of conspiring with Salinas. In support of its position, the government cites a number of Supreme Court decisions that establish that a defendant cannot base a challenge to his conviction upon inconsistent jury verdicts. *See, e.g., United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943); *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). Specifically, the government argues that the decision in *Powell*, holding that the rule allowing inconsistent verdicts always applies, overrules the Fifth Circuit precedent that

carves out an exception for acquitted co-conspirator cases.

In *Powell*, the Court said that where a jury reaches truly inconsistent verdicts, "the most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." 469 U.S. at 64–65, 105 S.Ct. at 476–477 (quoting *Dunn*, 284 U.S. at 393, 52 S.Ct. at 190). Rather than proclaiming a defendant's factual innocence of an offense, a "not guilty" verdict may stem from mistake, compromise, or lenity, and because the government cannot appeal the incorrect acquittal, it would not be fair to allow the defendant to inquire into the jury reasoning. *Powell*, 469 U.S. at 65–66, 105 S.Ct. at 476–477. Thus, as the government explained at oral argument, Olvera's acquittal does not mean that he did not conspire with Salinas; instead it could mean that the jury felt sorry for the alien because he was going to receive only $250 from the conspiracy.

 We find the logic behind the government's argument convincing. The *Powell* holding could permit inconsistent verdicts against alleged co-conspirators as in this case. Nevertheless, we cannot overrule the decision of a prior panel unless such overruling is unequivocally directed by controlling Supreme Court precedent. *See Society of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1211 (5th Cir.1991).

 The traditional rule in this and other circuits has been that where all alleged co-conspirators but one have been found not guilty at trial, that remaining co-conspirator cannot be convicted of the offense of conspiracy. *See, e.g., Sheikh*, 654 F.2d at 1062 (5th Cir. Unit A Sept. 1981); *Herman v. United States*, 289 F.2d at 368–369. Although we have criticized that rule, we have never overturned it. Therefore, ab-

---

1. Our conclusion in this regard does not bar Salinas from challenging the adequacy of his representation in collateral proceedings. Although the district court correctly dismissed his 28 U.S.C. § 2254 motion to set aside the conviction pending appeal, *see Fassler v. United States*, 858 F.2d 1016, 1019 (5th Cir.1988), the dismissal was without prejudice and would not bar his motion following the close of these proceedings.

sent an unequivocal contrary holding by the Supreme Court, we must adhere to our prior decisions and consider ourselves bound by *Herman* and *Sheikh.*

In *Powell,* the Court upheld a jury verdict that found the defendant guilty of using the telephone to facilitate a felony, yet innocent of the predicate felony. 469 U.S. at 60, 105 S.Ct. at 474. The case at hand differs conceptually from *Powell* in that the jury found Salinas guilty under a conspiracy charge that named only him and one other co-defendant, Olvera, who was acquitted. Since agreement, which requires more than one person, is the key element of conspiracy, *Herman,* 289 F.2d at 368, we cannot see that *Powell* equally overrules *Herman* and *Sheikh.*[2] We thus affirm the district court's judgment of acquittal but suggest that this court rehear the instant case en banc to consider the viability of the *Herman/Sheikh* holdings in light of *Powell.*

## VI.

Because the evidence was sufficient to support the jury's verdict and Salinas filed his motion for a new trial too late, we AFFIRM the conviction for possession of 144 pounds of marihuana with intent to distribute and the denial of the motion for a new trial. Concluding that we cannot overturn this court's decisions in *Herman* and *Sheikh,* we AFFIRM the judgment of acquittal on the conspiracy charge, but we suggest that the circuit consider the question en banc.

---

**2.** We recognize that First and Ninth Circuit panels have held that *Powell* overruled their previous rules of consistency. *See United States v. Bucuvales,* 909 F.2d 593, 597 (1st Cir.1990); *United States v. Valles–Valencia,* 823 F.2d 381 (9th Cir.), *modifying on panel rehearing* 811 F.2d 1232 (9th Cir.1987). However, based upon the reasoning above, we elect to follow the approach of the Eleventh Circuit in *United States v. Andrews,* 850 F.2d 1557, 1561 (11th Cir.1988) (en banc), which overruled *Herman* only after a rehearing en banc.