IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 6, 2009

Charles R. Fulbruge III
Clerk

No. 08-10813

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CEDRIC ROSE, also known as John Wayne,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before KING, DAVIS, and BENAVIDES, Circuit Judges.

PER CURIAM:

Cedric Rose was convicted of one count of possession of crack cocaine with intent to distribute, one count of possession of a firearm in furtherance of a drug trafficking offense, and two counts of possession of a firearm by a convicted felon. He appeals his concurrent sentences of 360 months and his consecutive life sentence, claiming constitutional errors and insufficient evidence. We affirm.

## I. BACKGROUND

Just after midnight on February 9, 2007, Officers Burke and Riede of the Dallas Police Department observed a vehicle arrive at a known drug house. The officers, who were standing next to their marked police car while watching the house, saw the vehicle remain parked outside the house for several minutes

before it pulled off and began driving toward them. When the vehicle approached the police car, it stopped, backed up, turned around, and drove off in the opposite direction. The officers entered their car and followed the vehicle; when they saw that it was missing a rear license plate, they initiated a traffic stop.

Officer Riede approached the vehicle on the driver's side, while Officer Burke approached from the passenger's side. Aeisha Mitchell was driving, and Cedric Rose was sitting in the front passenger seat. Officer Burke shone a flashlight into the vehicle's window and observed a baggie of marijuana and crack cocaine between Rose's legs. When Officer Burke opened the door, Rose threw the baggie out of the vehicle, beyond the officer's reach. Officer Burke attempted to handcuff Rose, but Rose resisted. During the ensuing struggle, Rose stated that he "need[ed his] chips" while he repeatedly tried to reach under the front passenger seat; there was a bag of potato chips in the vehicle's center console. After he was subdued, Rose told the officers that there was a firearm under the front passenger seat; Officer Burke then found a loaded .38-caliber handgun with an obliterated serial number in the area Rose had tried to reach. A brief search of the passenger area and glove compartment did not uncover any drug paraphernalia. Officer Burke later retrieved the baggie Rose had thrown, which was sent to the Southwest Institute of Forensic Sciences (SWIFS) for testing. The officers did not arrest Mitchell, and they did not impound the vehicle.

Rose was charged by a four-count superseding indictment. The four counts were one count of possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii); one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and two counts of possession of firearms subsequent to

a felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).[1] The government filed a sentencing enhancement information alerting the court that it would seek a life sentence under 18 U.S.C. § 3559(c) for the charge of possession of a firearm in furtherance of a drug trafficking crime. Rose waived his constitutional right to be tried by jury, and the district court conducted a bench trial.

After Officer Burke testified to the facts surrounding the traffic stop and arrest, the government called Monica Lopez, the supervisor of the drug laboratory at SWIFS. Lopez testified as an expert witness about the analysis that her laboratory had conducted on the crack cocaine Rose had thrown from the vehicle. SWIFS determined that the sample contained 15.5 grams of crack cocaine. Lopez identified the laboratory report that SWIFS had prepared; she was not listed as the "Analyst," but she signed the lab report as a "Reviewer." Lopez testified that the analyst had generated the report. Rose did not object to Lopez's testimony or to the report; the report was admitted into evidence. Rose's cross-examination of Lopez focused exclusively on the calibration of the testing equipment.

The government's next witness was Special Agent Dan Kaase of the Bureau of Alcohol, Tobacco, Firearms, and Explosives . He testified as an expert witness that drug dealers typically carry small handguns that can be concealed. He further testified that the street value of 15.5 grams of crack cocaine was approximately $1,500, which was inconsistent with possession for personal use. According to Kaase, the fact that numerous smaller baggies containing crack cocaine were packaged inside a larger bag suggested that the drugs were intended for resale; Kaase also cited the lack of any drug paraphernalia to

---

[1] The third count charged Rose with possession of the .38-caliber firearm on February 9, 2007, when he was arrested by Officer Burke. The fourth count charged Rose with possession of a .22-caliber firearm on July 30, 2007.

support that conclusion.

The government called Mitchell, the driver of the vehicle, to describe the events of that night as she recalled them. She testified that she did not know Rose had a gun with him that night and that she had seen Rose with the .38 before. She further testified that she overheard Rose tell the officers both that there was a gun in the vehicle and that she did not know it was there.

To support the two counts of possession of a firearm subsequent to a felony conviction, the government introduced records of Rose's convictions for unauthorized use of a motor vehicle, felony theft, burglary of a building, aggravated robbery (on four occasions), and aggravated sexual assault. With regard to the fourth count in the superseding indictment, which was unrelated to Rose's arrest on February 9, 2007, the government called Officer Erin Kaschalk of the Dallas Police Department. Officer Kaschalk testified to arresting Rose for driving a stolen vehicle at 4:30 a.m. on July 30, 2007; a .22-caliber handgun, manufactured in Utah, was found between the driver's seat and the center console during a search of the vehicle.

To explain the circumstances of Rose's July 30 arrest, the government called Jose Guevara to the stand. Guevara testified he and his coworker, Raul Castaneda, had visited a strip club on July 20, 2007, in Castaneda's car—the one Rose was driving when he was arrested by Officer Kaschalk. Guevara drove the car to his home when Castaneda was arrested for public intoxication. While in the process of returning the car the following morning, Guevara encountered Rose and attempted to purchase powder cocaine. When Guevara declined to accept crack cocaine, Rose became frustrated and asked for the money anyway; when Guevara refused, Rose shot him in the leg, then pointed the gun at Guevara's face. Guevara fled the car and collapsed; the car was gone when he looked back. When presented with a photograph of the .22-caliber handgun, Guevara testified that it looked like the gun Rose used to shoot him. Castaneda

4

testified that the .22-caliber handgun was not in his car on the night of July 20 and that he reported the car stolen after learning that Guevara had been shot.

The district court denied the defense's motion for judgment of acquittal after the government rested its case in chief. The defense called Rose's brother as a character witness before resting. The district court rendered a verdict of guilty on all four counts, then denied the defense's renewed motion for judgment of acquittal. Rose made an objection to the initial presentence report limited to the factual statements it contained, while the government objected that the report did not address the career offender statute, 18 U.S.C. § 3559(c)(1). An addendum addressed the government's objection; Rose raised constitutional objections to application of § 3559(c)(1), but otherwise simply reiterated his objections to the initial presentence report. Rose was sentenced to concurrent terms of 360 months' imprisonment for the count of possession with intent to distribute and the counts of being a felon in possession of a firearm. On the count of possession of a firearm in furtherance of a drug trafficking crime, the district court applied § 3559(c)(1) and imposed a consecutive sentence of life imprisonment. A consecutive five-year period of supervised release and a $400 special assessment were also imposed. Rose now appeals.

## II. DISCUSSION

Rose makes five arguments on appeal: (1) admission of the lab report without the testimony of the authoring analyst violated his rights under the Confrontation Clause of the Sixth Amendment; (2) there was insufficient evidence to convict him of possessing a firearm in furtherance of a drug trafficking offense; (3) the district court erred when it found his prior convictions for aggravated robbery were serious violent felonies triggering the career offender statute; (4) the career offender statute is unconstitutional; and (5) Rose's lack of knowledge that the firearms had moved in interstate commerce precluded convictions for being a felon in possession of a firearm. We address

each of these arguments in turn.

## A. Confrontation Clause

Rose claims for the first time on appeal that the SWIFS lab report was testimonial hearsay, and its admission—without the accompanying testimony of the analyst who conducted the testing—violated his Sixth Amendment right to be confronted with the witnesses against him. Because Rose did not object at trial to the introduction of the lab report, we review its admission for plain error. *See* FED. R. CRIM. P. 52(b); *United States v. Garcia–Quintanilla*, 574 F.3d 295, 298 (5th Cir. 2009).[2] An error or defect is plain if it was clear or obvious and affected the defendant's substantial rights. *See Puckett v. United States*, — U.S. —, —, 129 S. Ct. 1423, 1429 (2009). If such an error is shown, we may exercise our discretion to remedy the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted). "[I]n reviewing . . . for plain error, we look to the law—all of the law—as it now exists on appeal." *United States v. Dupre*, 117 F.3d 810, 817 (5th Cir. 1997); *accord United States v. Cotton*, 535 U.S. 625, 632 (2002); *Johnson v. United States*, 520 U.S. 461, 468 (1997) ("[I]t is enough that an error be 'plain' at the time of appellate consideration.").

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. This right renders testimonial statements by a non-testifying witness inadmissible unless the witness is unavailable and was previously subject to cross-examination by the defendant. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). The Supreme Court has held that sworn certificates of analysis detailing the results of forensic analyses on suspected drugs are testimonial statements for purposes of the Confrontation Clause. *See*

---

[2] Because it would not affect our conclusion on this issue, we do not address the government's argument that Rose waived his Confrontation Clause objection.

*Melendez–Diaz v. Massachusetts*, — U.S. —, —, 129 S. Ct. 2527, 2532 (2009).

In *Melendez–Diaz*, the Court considered whether the defendant's Confrontation Clause rights were violated when three certificates of analysis were admitted into evidence without the live testimony of any witnesses regarding how the tests were performed, what equipment was used, or what methodology was followed. *Id.* at —, 129 S. Ct. at 2532. The Court found that the certificates—notarized documents describing the nature and quantity of the substances tested, and created for a prosecutorial purpose—were properly considered affidavits, and were within the core class of testimonial statements triggering the right to confront the authoring analysts. *Id.* at —, 129 S. Ct. at 2531–32.

Rose asserts that the SWIFS lab report is testimonial, like the certificates of analysis in *Melendez–Diaz*, and he therefore was entitled to be confronted with the analyst who actually performed the tests. The government counters that Rose's confrontation rights were not violated because Lopez, who was the supervisor of the laboratory and the reviewer of the analysis at issue and who signed the report as such, testified in court, and was subject to cross-examination by Rose. The government further asserts that the ambiguity in the record regarding Lopez's role in the testing precludes a finding on appeal that any error was plain.

We agree that the SWIFS lab report, like the certificates of analysis in *Melendez–Diaz*, is a testimonial statement for purposes of the Confrontation Clause. However, we conclude that, on this record, any error that may have resulted from admitting the SWIFS lab report was not plain. As an initial matter, Lopez's testimony does not precisely delineate whether she did or did not have personal knowledge of the tests performed or the results of the report.[3]

---

[3] For example, when asked what procedures were used to analyze the drugs seized, Lopez replied, "*We use* a combination of analytical techniques . . . ." When asked about how

7

These are matters that should have been brought out either on direct examination or on cross-examination, but Rose's failure to object to her testimony or to the report left the issue unclear. In addition, the *Melendez–Diaz* Court wrote of the non-testifying analysts in terms of whose names appeared on the reports: "The analysts *who swore the affidavits* provided testimony [in the form of the certificates of analysis] against Melendez–Diaz, and they are therefore subject to confrontation." *Id.* at — n.6, 129 S. Ct. at 2537 n.6 (emphasis added). On the other hand, it expressly rejected the notion "that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." *Id.* at — n.1, 129 S. Ct. at 2532 n.1. The Court further reasoned that strategic concerns will often weigh in favor of stipulating to the nature of the drug or declining to object to introduction of certificates of analysis: "We simply do not expect defense attorneys to believe that their clients' interests (or their own) are furthered by objections to analysts' reports whose conclusions counsel have no intention of challenging." *Id.* at — n.13, 129 S. Ct. at 2542 n.13. Here, given the ambiguity of Lopez's role in the lab analysis and the fact that she signed the lab report, we do not discern plain error.

We clarify here that we do not hold that the prosecution may avoid confrontation issues through the in-court testimony of any witness who signed a lab report without regard to that witness's role in conducting tests or preparing the report. Instead, we refer to the above language from

---

a color test is performed and what was done in the lab, Lopez answered, "In this case, the analyst *typically* takes a solution, places it in a clean well plate and adds the substance to it. The substance produces a color reaction, which gives us an idea of whether it's cocaine or some other substance. In this case, it gave us an indication that it was cocaine." Rose's cross-examination of Lopez focused exclusively on the calibration of the testing equipment; it did not probe whether Lopez was referring to the lab's procedures generally or whether she had personal knowledge of the tests performed in this case.

*Melendez–Diaz* to illustrate that any error that may have arisen from the facts of this case—another issue on which we reserve judgment—was not plain as required by our standard of review under Rule 52(b).[4]

## B.   Possession of a Firearm in Furtherance of a Drug Trafficking Offense

Rose asserts that there was insufficient evidence to convict him of possession of a firearm in furtherance of a drug trafficking offense. Because Rose moved for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, we review this claim *de novo*. *See United States v. Ollison*, 555 F.3d 152, 158 (5th Cir. 2009). "We review the record to determine whether a rational trier of fact, after considering all the evidence and reasonable inferences drawn therefrom in a light most favorable to the verdict, could have found the defendant guilty beyond a reasonable doubt." *United States v. Harris*, 420 F.3d 467, 470 (5th Cir. 2005) (internal quotation marks omitted). We apply

---

[4] In finding that any error was not plain, we note also that other courts have reached varying conclusions when faced with related factual situations. *Compare Larkin v. Yates*, No. 09-2034, 2009 WL 2049991, at *1–2 (C.D. Cal. July 9, 2009) (unpublished) (denying application for writ of habeas corpus on confrontation issue where lab supervisor, testifying as expert witness, relied on result of tests performed by a non-testifying analyst, because the state courts did not unreasonably apply clearly established federal law); *People v. Rutterschmidt*, 98 Cal. Rptr. 3d 390, 411–13, — P.2d —, —, 176 Cal. App. 4th 1047, 1074–76 (2009) (distinguishing *Melendez–Diaz* where expert witnesses testified about scientific analyses in which they did not participate, but DNA test report was not introduced into evidence); *People v. Johnson*, — N.E.2d —, —, 2009 WL 2999142, at *8–9 (Ill. App. Ct. Sept. 18, 2009) (same); *Pendergrass v. State*, 913 N.E.2d 703, 707–08 (Ind. 2009) (upholding admission of DNA test without testimony of analyst who performed the test because the defendant "had the opportunity to confront at trial two witnesses who were directly involved in the substantive analysis," and because the "laboratory supervisor who took the stand did have a direct part in the process by personally checking [the analyst]'s test results"); *State v. Galindo*, — S.E.2d —, —, 2009 WL 3384175, at *4 (N.C. Ct. App. Oct. 20, 2009) (finding admission of drug test lab report was harmless error where supervisor testified about procedures and equipment, testing analyst did not testify, and other evidence adequately established the composition and quantity of the drugs) *with Wood v. State*, — S.W.3d —, —, 2009 WL 3230848, at *6 (Tex. App.—Austin Oct. 7, 2009, no pet. h.) (finding Confrontation Clause violation where chief medical examiner, not present at an autopsy, testified to the contents of the resulting autopsy report).

this standard to both circumstantial and direct evidence. *United States v. Mergerson*, 4 F.3d 337, 341 (5th Cir. 1993). The cumulation of circumstantial evidence may yield conclusive proof. *United States v. Ayala*, 887 F.2d 62, 67 (5th Cir. 1989). However, if "'the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, the conviction should be reversed.'" *Ollison*, 555 F.3d at 158 (quoting *United States v. Mackay*, 33 F.3d 489, 493 (5th Cir. 1994)).

Certain criminal penalties apply when "a[] person . . . , during and in relation to any crime of violence or drug trafficking crime . . . , uses or carries a firearm, or . . . in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). We have held that possession of a firearm is "in furtherance" of a drug trafficking crime when the "firearm possession . . . furthers, advances, or helps forward the drug trafficking offense." *United States v. Ceballos–Torres*, 218 F.3d 409, 415, *as amended on denial of rehearing and rehearing en banc*, 226 F.3d 651 (5th Cir. 2000). This "definition inherently requires more than 'mere presence' of [a] firearm at the scene." *Id.* at 414. We have articulated eight factors that courts should consider in determining whether this definition has been met:

> (1) the type of drug activity being conducted; (2) the accessibility of the firearm; (3) the type of weapon; (4) whether the weapon is stolen; (5) whether the possession is lawful; (6) whether the gun is loaded; (7) the weapon's proximity to drugs or drug profits; and (8) the time and circumstances under which the gun is found.

*United States v. Charles*, 469 F.3d 402, 406 (5th Cir. 2006) (citing *Ceballos–Torres*, 218 F.3d at 414–15).

Taking the evidence in the light most favorable to the government and applying these eight factors, we conclude that a rational trier of fact could have found Rose guilty beyond a reasonable doubt. First, Rose possessed the crack cocaine for distribution, as demonstrated by the amount of the drug and the fact

that it was packaged in individual baggies; Special Agent Kaase testified that drug dealers often carry handguns for protection. The .38-caliber handgun was underneath Rose's seat and not closed in any other compartment of the vehicle. In addition, the weapon was a handgun capable of being concealed on or near Rose's person. It is not clear whether the weapon was stolen because the serial number had been obliterated, but it is undisputed that it was unlawful for Rose, a convicted felon, to possess a firearm. The gun was loaded, and it was directly underneath the seat where Rose was sitting with the drugs in his lap. Finally, the gun was found after midnight in a vehicle that had just pulled away from a known drug house; Rose reached for it during a struggle with Officer Burke; and Rose told the officers that Williams, the driver, did not know about the gun. A rational trier of fact was entitled to conclude that Rose possessed the .38-caliber handgun "in furtherance" of a drug trafficking offense.

## C. Prior Convictions Triggering the Career Offender Statute, 18 U.S.C. § 3559(c)

In seeking to avoid the life sentence imposed against him, Rose claims that the district court erred in concluding that his prior convictions triggered the career offender provision of 18 U.S.C. § 3559(c). The gravamen of Rose's argument is that "aggravated robbery," as defined by § 29.03 of the Texas Penal Code,[5] is not a "serious violent felony" for purposes of the sentencing

---

[5] The aggravated robbery statute provides, in relevant part:
A person commits an offense if he commits robbery as defined in Section 29.02, and he:
(1) causes serious bodily injury to another; [or]
(2) uses or exhibits a deadly weapon[.]
TEX. PENAL CODE § 29.03(a). That section incorporates the definition of robbery:
A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:
(1) intentionally, knowingly, or recklessly causes bodily injury to another; or
(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.
*Id.* § 29.02(a). The definition of robbery in turn incorporates the definition of theft, which is the "unlawful[] appropriat[ion of] property with intent to deprive the owner of property." *Id.*

enhancement mandated by 18 U.S.C. § 3559(c)(1)(A). At the district court, Rose did not object on this ground to the addendum to the presentence report, which found that his aggravated robbery convictions counted for purposes of the career offender statute. Rose argues that we should apply de novo review rather than plain error because the government's objection to the initial presentence report placed the district court on notice that the career offender statute would be at issue. The government rejects that conclusion and urges plain error review. We agree that Rose's failure to make a specific objection below did not put the district court on notice of his claim; we therefore review under the plain error standard.[6]

The career offender statute provides that "a person who is convicted . . . of a serious violent felony shall be sentenced to life imprisonment if . . . the person has been convicted [of] . . . 2 or more serious violent felonies." 18 U.S.C. § 3559(c)(1)(A)(i). The statute defines a "serious violent felony" to include:

> (i) a Federal or State offense, by whatever designation and wherever committed, consisting of . . . robbery (as described in section 2111, 2113, or 2118) . . . ; and

> (ii) any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense[.]

*Id.* § 3559(c)(2)(F). Rose does not dispute that his conviction of aggravated sexual assault qualifies under this provision, but instead urges that none of his

---

§ 31.03(a).

[6] Rose insists that under *United States v. Ocana*, 204 F.3d 585 (5th Cir. 2000), error is preserved "if the district court is notified of the defendant's disagreement with the court's action and given an opportunity to address the issue." This characterization of *Ocana* is unavailing because at no point was the district court ever alerted that Rose claimed the aggravated robbery convictions did not qualify as serious violent felonies.

convictions for aggravated robbery qualifies as a second serious violent felony.

Rose cites 18 U.S.C. §§ 2111, 2113, and 2118 as criminalizing robbery "by" force, violence, intimidation, or extortion. He then points out that the Texas aggravated robbery statute permits conviction where a defendant has completed a theft and uses force during his or her flight. Rose argues that this is a substantive distinction because the Texas statute criminalizes more than § 3559(c) contemplates. However, this attempted distinction ignores that Texas courts require a close nexus between the theft and the force. *See Lightner v. State*, 535 S.W.2d 176, 178 (Tex. Crim. App. 1976) ("[R]obbery includes . . . any violence while in *immediate flight* from the scene of [a] theft." (emphasis added)). In addition, we have held that commission of an offense under § 29.02 of the Texas Penal Code, which punishes robbery that—unlike Rose's convictions—is not aggravated, is a violent felony under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), which is similar in definition to 18 U.S.C. § 3559(c).[7] *See United States v. Davis*, 487 F.3d 282, 287 (5th Cir. 2007) ("Because a violation of the Texas robbery statute poses a substantial risk of violent confrontation, there is a substantial risk that physical injury will result. Accordingly, the offense qualifies as a violent felony under . . . § 924(e), and the district court did not err, let alone plainly err, in enhancing Davis's sentence under the ACCA."). Given this legal background, we cannot say that the district court committed plain error in finding that Rose's aggravated robbery convictions were serious violent felonies.

---

[7] Section 924(e) defines "violent felony" to include offenses that "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another; or . . . involve[] conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). Similarly, § 3559(c) includes offenses that "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another or that, by [their] nature, involve[] a substantial risk that physical force [will be used] against the person of another." 18 U.S.C. § 3559(c)(2)(F)(ii). The only significant distinction in language is that § 924(e) requires a serious potential risk of physical injury, while § 3559(c)(2) requires only a substantial risk of the use of physical force.

## D. Constitutionality of the Career Offender Statute, 18 U.S.C. § 3559(c)

Rose contends that the career offender statute, 18 U.S.C. § 3559(c), is unconstitutional because it offends the separation of powers doctrine, constitutes cruel and unusual punishment, and deprives him of due process. Specifically, he claims that the statute: (1) permits the executive branch to invoke a mandatory life sentence, a role reserved for the judiciary; (2) mandates grossly disproportionate punishment in violation of the Eighth Amendment; and (3) deprives defendants of due process by placing on them the burden of establishing, by clear and convincing evidence, that a robbery offense is exempt from the reach of the statute. In his opening brief, Rose concedes that these claims are foreclosed by circuit precedent. *See United States v. Martin*, 431 F.3d 846, 853 (5th Cir. 2005) (upholding § 3559(c) against Eighth Amendment challenge that it violated proportionality requirements); *United States v. Ferguson*, 211 F.3d 878, 886–87 (5th Cir. 2000) (rejecting due process challenge to shifting the burden to defendants); *United States v. Rasco*, 123 F.3d 222, 226 (5th Cir. 1997) (holding that § 3559(c) does not violate the separation of powers doctrine). We are bound by the decisions of prior panels, *United States v. Castro–Guevarra*, 575 F.3d 550, 552 (5th Cir. 2009), and do not revisit those holdings here.

## E. Evidence that the Firearms Had Moved in Interstate Commerce

Rose argues that we should vacate his two convictions for possession of firearms by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924. In his opening brief, Rose claimed that his motion for judgment of acquittal should have been granted because the government adduced no evidence that he knew the .38- or .22-caliber handguns had traveled in interstate commerce. He conceded in that brief that this argument was foreclosed by this court's decision in *United States v. Dancy*, 861 F.2d 77, 81–82 (5th Cir. 1988) (per curiam). *Dancy* remains good

law in this circuit. *See United States v. Schmidt*, 487 F.3d 253, 254 (5th Cir. 2007) ("[C]onviction under § 922(g)(1) requires proof that the defendant knew that he had received (or possessed or transported) a firearm but does not require proof that he knew that the firearm had an interstate nexus or that he was a felon."). However, in his reply brief, Rose argues that the intervening decision of *Flores–Figueroa v. United States*, — U.S. —, 129 S. Ct. 1886 (2009), compels a different conclusion.

"Whether . . . a *mens rea* requirement exists is a question of law, which we review *de novo*." *United States v. Privett*, 68 F.3d 101, 104 (5th Cir. 1995). Rose claims that the penalty provision, found in 18 U.S.C. § 924(a)(2), requires proof that he "knowingly violate[d]" 18 U.S.C. § 922(g), which criminalizes possession of a firearm by one "who has been convicted in any court of[] a crime punishable by imprisonment exceeding one year." 18 U.S.C. § 922(g)(1). While it may be true that § 924(a)(2) applies a *mens rea* requirement, Rose was not sentenced under that provision. Rather, he was sentenced under § 924(e)(1), which contains no such requirement.[8]

*Flores–Figueroa* does not modify the proof required for conviction and sentencing under §§ 922(g)(1) and 924(e)(1). The statute at issue in that case was 18 U.S.C. § 1028A(a)(1), which imposes a mandatory consecutive two-year prison term upon offenders convicted of certain other crimes if, during the commission of those crimes, the offender "knowingly transfers, possesses, or

---

[8] That section provides:

In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1).

uses, without lawful authority, a means of identification of another person." *See Flores–Figueroa*, — U.S. at —, 129 S. Ct. at 1888. The Court construed this language to require proof that the defendant knew that the means of identification belonged to another person. *Id.* at —, 129 S. Ct. at 1894. Here, in contrast, neither § 922(g)(1) nor § 924(e)(1) contains language indicating that there is a *mens rea* requirement; *Flores–Figueroa* therefore does not apply.[9]

We will overrule a prior panel opinion in response to an intervening decision of the Supreme Court only if "'such overruling is *unequivocally* directed.'" *Cain v. Transocean Offshore USA, Inc.*, 518 F.3d 295, 300 (5th Cir. 2008) (quoting *United States v. Zuniga–Salinas*, 945 F.2d 1302, 1306 (5th Cir. 1991)). Because *Flores–Figueroa* does not so direct, we are bound to follow the prior panel opinion in *Dancy*.

## III. CONCLUSION

Rose has not demonstrated that admission of the lab report was plain error. The district court had sufficient evidence to convict him of possession of a firearm in furtherance of a drug trafficking offense, and it committed no error in finding that Rose's prior convictions for aggravated robbery were serious violent felonies triggering the career offender statute. Rose's remaining contentions are foreclosed by circuit precedent. We therefore AFFIRM Rose's conviction and sentence.

---

[9] Even assuming arguendo that the "knowingly" requirement in § 924(a)(2) applied throughout that section, there would be no corresponding impact on the elements of a crime listed in § 922(g)(1). *See United States v. Fulbright*, No. 08-10985, 2009 WL 3199609, at *2 (5th Cir. Oct. 7, 2009) (unpublished; per curiam) (rejecting argument that *Flores–Figueroa* overruled *Dancy* or *Schmidt*); *cf. United States v. Betancourt*, — F.3d —, —, 2009 WL 3233532, at *6 (5th Cir. Oct. 9, 2009) (declining to apply a knowledge requirement that "appear[ed] in one subsection[] to a different subsection entirely").