# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-10931

United States Court of Appeals
Fifth Circuit

**FILED**
November 5, 2019

Lyle W. Cayce
Clerk

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff - Appellee

v.

TEAM RESOURCES INCORPORATED; FOSSIL ENERGY CORPORATION; KEVIN A. BOYLES,

Defendants - Appellants

Appeals from the United States District Court
for the Northern District of Texas

Before KING, HIGGINSON, and DUNCAN, Circuit Judges.

STUART KYLE DUNCAN, Circuit Judge:

The Securities and Exchange Commission ("SEC") filed an enforcement action against Kevin Boyles and two companies he created, Team Resources and Fossil Energy, because it believed Boyles was scamming investors. While the case was pending, the Supreme Court decided *Kokesh v. SEC*, in which it held that disgorgement in SEC proceedings is a "penalty" under 28 U.S.C. § 2462 and therefore subject to a five-year statute of limitations. 137 S. Ct. 1635, 1643 (2017). We must decide whether *Kokesh* necessarily overruled our established precedent recognizing district courts' authority to order disgorgement in SEC enforcement proceedings. *See, e.g., SEC v. Blatt*, 583 F.2d

No. 18-10931

1325, 1335 (5th Cir. 1978). It did not. We recognize that the Supreme Court has recently agreed to review a Ninth Circuit decision addressing whether district courts have disgorgement authority after *Kokesh. See SEC v. Liu*, 754 F. App'x 505 (9th Cir. 2018) (unpublished), *cert. granted sub nom. Liu v. SEC*, --- S. Ct. ---, 2019 WL 5659111 (U.S. Nov. 1, 2019) (No. 18-1501). Nonetheless, "we have traditionally held that even when the Supreme Court has granted certiorari in a relevant case, we will continue to follow binding precedent." *United States v. Islas-Saucedo*, 903 F.3d 512, 521 (5th Cir. 2018) (citing *Wicker v. McCotter*, 798 F.2d 155, 158 (5th Cir. 1986)). We therefore affirm the district court's disgorgement order as well as its other decisions challenged here.

I.

The SEC alleged the following facts to which Boyles, Team Resources, and Fossil Energy (collectively, "Appellants") stipulated for the limited purpose of the disgorgement order under review here. In 2008 Boyles formed Team Resources Incorporated to be the managing general partner for multiple oil and gas limited partnerships. Boyles used Team Resources to buy oil and gas leases, which he then placed in limited partnerships managed by Team Resources. Through various limited partnerships managed by both Team Resources and Fossil Energy (a company Boyles created later), Boyles raised money from 475 investors to the tune of $33 million. Boyles and his salespeople—none of whom was registered as a securities broker as required by law—promised sky-high returns on investment.

Things did not work out that way. The oil and gas leases were not commercially viable—a fact the SEC alleges Boyles knew beforehand. Investment returns were bad or non-existent. Yet Boyles painted a positive picture for investors instead of disclosing the dismal reality. All the while, the salespeople collected commissions ranging from 15% to 25% (a detail not disclosed to investors). In the end, the investors lost all or most of their money.

2

No. 18-10931

The SEC then sued Boyle, Team Resources, and Fossil Energy.[1] Settlement was almost instantaneous. Appellants neither admitted nor denied the allegations of the complaint but agreed that the court would enter a permanent injunction against them enjoining any future violations of securities laws. Appellants also agreed "that the Court shall order disgorgement of ill-gotten gains, with prejudgment interest thereon." The agreements provided that "[i]n connection with the Commission's motion for disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties." The district court entered the agreements, required Appellants to "pay disgorgement of ill-gotten gains," and stated that it would determine the amounts of that disgorgement "upon motion of the Commission."

In February 2017, the SEC moved for remedies and final judgment, asking for disgorgement in the amount of $30,494,037. Appellants responded that the five-year statute of limitations in 28 U.S.C. § 2462 barred the SEC from seeking the disgorgement amount it requested. They also contended that the SEC's disgorgement calculation failed to account for legitimate business expenses and generally failed to distinguish lawfully obtained funds from those that were ill-gotten.

While the SEC's motion was pending, the Supreme Court held in *Kokesh v. SEC* that disgorgement in SEC enforcement proceedings is a "penalty" under § 2462 and therefore subject to a five-year statute of limitations. 137 S. Ct. at 1643. In response, the SEC amended its motion in this case and reduced the amount of disgorgement sought to $15,508,280 to reflect the five-year limit. Appellants again attacked the disgorgement amount, but this time they also argued that, after *Kokesh*, district courts no longer have authority to order

---

[1] The complaint also named other defendants, but they are not parties to this appeal.

No. 18-10931

disgorgement in SEC proceedings. Appellants also stated that they would "contend at a hearing" that various expenses must be deducted from the disgorgement amount and asserted that they "should have an opportunity in discovery, in advance of a hearing," to test the SEC's calculation. Appellants did not, however, actually move for a hearing, and one was never held.

The district court granted the SEC's motion in part. Appellants were ordered to disgorge $15,508,280. Noting that *Kokesh* itself had expressly stated that "[n]othing in [its] opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings," 137 S. Ct. at 1642 n.3, the district court rejected Appellants' argument that it could not order disgorgement. It also rejected Appellants' challenges to the amount of disgorgement and declined to deduct any money as a legitimate business expense because the "overwhelming weight of authority hold[s] that securities law violators may not offset their disgorgement liability with business expenses." *SEC v. Kahlon*, 873 F.3d 500, 509 (5th Cir. 2017) (per curiam) (alteration in original) (quoting *SEC v. United Energy Partners, Inc.*, 88 F. App'x 744, 746 (5th Cir. 2004)). This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

Whether the district court had authority to order disgorgement is a legal question reviewed *de novo. SEC v. AMX Int'l, Inc.*, 7 F.3d 71, 73 (5th Cir. 1993). We review the court's decision to order disgorgement for abuse of discretion. *Kahlon*, 873 F.3d at 504. An abuse of discretion standard also applies to the court's decision not to order discovery or hold an evidentiary hearing. *United States ex rel. Taylor-Vick v. Smith*, 513 F.3d 228, 232 (5th Cir. 2008); *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998).

4

No. 18-10931

III.

Appellants argue that, by finding disgorgement a "penalty" under § 2462, *Kokesh* necessarily also decided that disgorgement is not an equitable remedy courts may impose in SEC enforcement proceedings. We disagree. *Kokesh* itself expressly declined to address that question, and so our precedent upholding district court authority to order disgorgement controls. Appellants' argument that the district court abused its discretion by not ordering discovery or holding a hearing on disgorgement also fails because the district court implemented the terms of the parties' settlement agreement and Appellants failed to request a hearing or initiate any discovery.

A.

In *Kokesh v. SEC*, the Supreme Court held that disgorgement constitutes a "penalty" for purposes of 28 U.S.C. § 2462 and that disgorgement actions must therefore commence within five years of the accrual of the cause of action. 137 S. Ct. at 1639. The defendant in *Kokesh* was accused of misappropriating nearly $35 million from various companies between 1995 and 2009. *Id.* at 1641. A jury found the defendant violated applicable securities laws. *Id.* The district court recognized that § 2462's limitations period barred any penalties for misappropriation more than five years before the SEC filed its complaint, but held that § 2462 did not apply because disgorgement is not a "penalty" under the statute. *Id.* The Tenth Circuit affirmed.

In reversing the Tenth Circuit, the Supreme Court cited its decision in *Huntington v. Attrill*, 146 U.S. 657 (1892), which defined "penalty" as a "punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offen[s]e against its laws." *Kokesh*, 137 S. Ct. at 1642 (alteration in original). Applying that definition, the Court reasoned that disgorgement is ordered by courts for violations committed against the United

5

No. 18-10931

States and that it is imposed for punitive purposes. *Id.* at 1643. Thus, the Court concluded, disgorgement qualifies as a "penalty" under § 2462.

Yet *Kokesh* cabined its own reach: "Nothing in this opinion," the Court stated, "should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings or on whether courts have properly applied disgorgement principles in this context." *Id.* at 1642 n.3. "The *sole* question presented in this case," the Court continued, "is whether disgorgement, as applied in SEC enforcement actions, is subject to § 2462's limitations period." *Id.* (emphasis added).

Despite this clear statement, Appellants contend that *Kokesh* implicitly did what it explicitly said it did not do. The thrust of their argument is that *Kokesh*, by deciding that disgorgement constitutes a penalty under § 2462, necessarily decided that disgorgement is no longer an equitable remedy. Since "[f]ederal courts are courts of limited jurisdiction[,]" and only have "power authorized by Constitution and statute," *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 378 (1994), the authority to order a disgorgement penalty must come from a statutory source. Yet the statutes governing civil enforcement actions do not explicitly authorize disgorgement even though they authorize civil monetary penalties. *See* 15 U.S.C. §§ 77t(d); 78u(d)(3). And the Penny Stock Reform Act, which does authorize disgorgement, only does so for administrative proceedings. *See* 15 U.S.C. § 77h-1(e); *see also id.* § 78u-2(e). Thus, Appellants contend, the district court lacked authority to order disgorgement in this civil enforcement action.

We are not persuaded *Kokesh* decided that much. *Kokesh* decided only the issue before it—"whether § 2462 applies to claims for disgorgement imposed as a sanction for violating a federal securities law." 137 S. Ct. at 1639. The Court's discussion, while examining whether disgorgement is properly classified as a "penalty" in the context of that single statute, did not purport to

decide that disgorgement can never be classified as equitable in any context. To the contrary, *Kokesh* expressly disavowed that it was addressing "whether courts possess authority to order disgorgement in SEC enforcement proceedings." 137 S. Ct. at 1642 n.3.[2] We are thus not convinced that *Kokesh* quietly revolutionized SEC enforcement proceedings while at the same time explicitly stating it was not doing so. Our conclusion mirrors those reached by our sister circuits when facing this issue. *See SEC v. de Maison*, --- F. App'x ---, 2019 WL 4127328 (2d Cir. Aug. 30, 2019) (unpublished); *Liu*, 754 F. App'x 505.[3] Furthermore, our circuit's rule of orderliness prohibits one panel from overturning a previous panel's decision "absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court." *Mercado v. Lynch*, 823 F.3d 276, 279 (5th Cir. 2016) (quoting *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008)) (italics in original). Supreme Court decisions do not overturn inferior-court decisions with a wink and a nudge. Even if a Supreme Court decision bears on an issue, "the . . . decision must be more than merely illuminating" and must "unequivocally direct[ ]" the overruling of the prior decision. *Martin v. Medtronic, Inc.*, 254 F.3d 573, 577 (5th Cir. 2001) (quoting *United States v.*

---

[2] Appellants assert that the relevant footnote in *Kokesh* "is . . . reasonably understood to be the Supreme Court's recognition that it was only tasked with deciding whether disgorgement in securities-enforcement actions was a civil penalty, and that it would, as it often does, save for another day a question not then before it." Pet. Br. at 21–22. We agree. But that only underscores the point that *Kokesh* does not unequivocally overturn district courts' authority to order disgorgement in SEC enforcement cases. Appellants further assert that "[t]here would be no logical reason for the Supreme Court's comment if it believed that courts *have* been properly applying the disgorgement penalty." *Id.* (emphasis in original). We disagree. The fact that Appellants cite *Kokesh* for the proposition that courts lack authority to order disgorgement illustrates exactly why the Supreme Court included footnote 3. Moreover, the footnote does not state that the Court doubts that district courts lack authority; it states only that the Court was not deciding the question.

[3] As already noted, the Supreme Court granted certiorari in *Liu* on November 1, 2019.

No. 18-10931

*Zuniga-Salinas*, 945 F.2d 1302, 1306 (5th Cir. 1991)). Anything less does not authorize panel to overrule panel. *Id.*

*Kokesh* may be "illuminating" on a court's authority to order disgorgement in this setting, but it does not "unequivocally" direct us to overrule our prior cases upholding that authority.[4] Since at least 1978 we have recognized that a "trial court act[s] properly within its equitable powers in ordering [a defendant] to disgorge the profits that he obtained by fraud." *Blatt*, 583 F.2d at 1335. Numerous other cases have proceeded on the assumption that such authority exists. *See, e.g., Kahlon*, 873 F.3d at 509; *AMX, Int'l.*, 7 F.3d 71; *SEC v. Huffman*, 996 F.2d 800 (5th Cir. 1993). In short, the principle that district courts may order disgorgement in SEC enforcement proceedings is well established in our circuit. We are therefore bound, as a panel, to follow that precedent absent an intervening change in the law. *Mercado*, 823 F.3d at 279.

In sum, we hold that *Kokesh* did not unequivocally abrogate our circuit precedent that the district court was authorized to order disgorgement against Appellants in this case.[5]

---

[4] True, during the *Kokesh* oral argument some members of the Supreme Court questioned the source of courts' authority to order disgorgement in civil enforcement proceedings. *See, e.g.*, Oral Argument at 5:00, *Kokesh v. SEC*, 137 S. Ct. 1635 (2017) (No. 16-529), https://www.supremecourt.gov/oral_arguments/audio/2016/16-529. And one scholar has argued that *Kokesh* "cast considerable doubt on the validity of the seemingly well-established disgorgement sanction." Stephen M. Bainbridge, *Kokesh Footnote Three Notwithstanding: The Future of the Disgorgement Penalty in SEC Cases*, 56 Wash. U. J.L. & Pol'y 17 (2018). But neither oral argument questions nor academic literature constitutes an intervening change in the law that would liberate this panel from its obligation to follow circuit precedent.

[5] Because we conclude that Appellants' argument is foreclosed by binding circuit precedent, we need not consider whether the language of the consent agreements in this case prohibits Appellants from challenging the fact of disgorgement. *See de Maison*, --- F. App'x ---, 2019 WL 4127328, at *1 n.1.

No. 18-10931

B.

Appellants next argue that even if the district court had authority to order disgorgement, we should still reverse because the district court (1) did not afford Appellants discovery to which they were entitled under the consent agreements and (2) did not hold an evidentiary hearing on the appropriate amount of disgorgement. Appellants also attack the disgorgement amount itself, contending they are entitled to deduct legitimate business expenses. We disagree with these contentions.

First, the district court did not deprive Appellants of discovery. The court entered the parties' settlement agreements, in which they agreed that "[i]n connection with the [SEC]'s motion for disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties." This was the opposite of "denying" Appellants discovery. By ratifying the settlement agreements, the court authorized the discovery to which the parties agreed. Appellants, however, failed to follow through by seeking any discovery. In opposing the SEC's amended motion for final judgment, Appellants stated that they should "have an opportunity in discovery, in advance of a hearing, to test" the SEC's disgorgement calculation. But from October 5, 2017 to June 4, 2018 (the period between the SEC's amended motion for final judgment and the district court's entry of final judgment), Appellants made no attempt to seek the discovery they claimed they wanted.

Appellants cite no authority establishing that a district court abuses its discretion in this situation. Discovery in civil litigation is litigant-driven; courts are not required to prod parties into conducting discovery if they do not move the process forward themselves. *Cf. Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973) ("The discovery provisions of the Federal Rules of Civil Procedure allow *the parties* to develop fully and crystalize concise factual issues for trial.") (emphasis added); *Shelak v. White Motor Co.*, 581 F.2d 1155,

1159 (5th Cir. 1978) ("The rules [governing discovery] are designed to narrow and clarify the issues and to give *the parties* mutual knowledge of all relevant facts.") (emphasis added). Moreover, a "district court's decisions in overseeing the discovery process are entitled to great deference on appeal." *United States v. Mora*, 994 F.2d 1129, 1138 (5th Cir. 1993). Appellants chose not to pursue discovery when it was available and now ask that we overturn the district court judgment because of their inaction. We decline to do so.

Moreover, it is unclear what discovery could have produced here. Appellants assert they wanted discovery showing the SEC's disgorgement estimate was inaccurate because it failed to consider Appellants' legitimate expenses. But as the SEC points out, any information that could have been used to rebut the estimate—*e.g.*, records of any business expenditures—would have already been in Appellants' possession. For this additional reason, we cannot say that the district court abused its discretion by ruling on the SEC's motion without ordering discovery to take place beforehand.

For similar reasons, the district court did not abuse its discretion by ruling on the SEC's remedies motion without holding an evidentiary hearing. The parties' agreements may have contemplated the possibility of a hearing, but they did not require one. And the parties agreed that the district court could resolve issues in the SEC's disgorgement motion "on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence." So the court's decision to rule on the SEC's motion without first holding a hearing could not have violated Appellants' rights under the settlement agreements because those agreements did not create a right to a hearing. At best, the agreements established only the possibility of a hearing.

Further, Appellants never moved for a hearing in the nearly eight-month period between the SEC's amended remedies motion and the court's order. In

opposing the SEC's amended motion, Appellants stated that they should "have an opportunity in discovery, in advance of a hearing, to test" the disgorgement calculation. But that is not a motion for a hearing. And though Appellants also stated in the same opposition that "a hearing to establish the critical causal connection and refute directly the SEC's conclusory assertions will be necessary," that is also not a formal request for a hearing. The district court thus never denied a request for a hearing because a request was never made. And Appellants agreed that the district court could decide the disgorgement amount based on, among other things, documentary evidence. That is exactly what happened.

Appellants' reliance on our sister circuit's decision in *SEC v. Smyth*, 420 F.3d 1225 (11th Cir. 2005), is misplaced. In *Smyth*, the defendant requested a hearing, but the district court denied the motion. *Id.* at 1230. Here, Appellants never moved for a hearing, so *Smyth* does not help them. *See SEC v. Aerokinetic Energy Corp.*, 444 F. App'x 382, 385 (11th Cir. 2011) (unpublished) (holding evidentiary hearing not required when not requested and when district court "[decided] the issues raised in the [SEC's] motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence"). We therefore conclude that the district court did not abuse its discretion by ruling on the SEC's motion without holding an evidentiary hearing.

We further conclude that the district court did not abuse its discretion in determining the amount of disgorgement in this case. As we recently observed, "the overwhelming weight of authority holds that securities law violators may not offset their disgorgement liability with business expenses." *Kahlon*, 873 F.3d at 509 (cleaned up); *see also SEC v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1115 (9th Cir. 2006) ("[I]t would be unjust to permit the defendants to offset against the investor dollars they received the expenses of running the

No. 18-10931

very business they created to defraud those investors into giving the defendants the money in the first place.").

AFFIRMED